*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0374p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STATE FARM FIRE AND CASUALTY COMPANY,
                                    *Plaintiff-Appellant,*

                                                                    No. 04-5823

        *v.*

JAMES MCGOWAN, individually and d/b/a JMAC
ENTERPRISES, and LORI L. DUTTON,
                                    *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 03-00258—Curtis L. Collier, District Judge.

Argued:  June 1, 2005

Decided and Filed:  August 31, 2005

Before:  BOGGS, Chief Judge; GILMAN, Circuit Judge; CLELAND, District Judge.[*]

---

## COUNSEL

**ARGUED:** Kenneth S. Williams, MADEWELL, JARED, HALFACRE & WILLIAMS, Cookeville, Tennessee, for Appellant.  Mollie A. Martin, DUNCAN & HATCHER, Chattanooga, Tennessee, William R. Dearing, CHAMBLISS, BAHNER & STOPHEL, Chattanooga, Tennessee, for Appellees.  **ON BRIEF:**  Kenneth S. Williams, James D. Madewell, MADEWELL, JARED, HALFACRE & WILLIAMS, Cookeville, Tennessee, for Appellant.  Mollie A. Martin, DUNCAN & HATCHER, Chattanooga, Tennessee, William R. Dearing, CHAMBLISS, BAHNER & STOPHEL, Chattanooga, Tennessee, for Appellees.

---

## OPINION

---

        RONALD LEE GILMAN, Circuit Judge.  This action concerns the coverage provided by a property owner's insurance policy issued by State Farm Fire and Casualty Company to James McGowan, the former owner of an apartment building.  State Farm filed a declaratory judgment action in federal court regarding its defense obligations to McGowan in a Tennessee state-court lawsuit filed by Lori L. Dutton.  Dutton, who lived in one of the apartments with her four-year-old

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

daughter Amy, filed suit against McGowan after a rotting tree collapsed onto the apartment during a thunderstorm, killing Amy. The district court held that State Farm was obligated to defend McGowan in the underlying action under the terms of the policy. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

McGowan, individually and doing business as JMAC Enterprises, owned a four-unit apartment building in Red Bank, Tennessee, in which Dutton and her daughter Amy lived. The premises were insured under a policy issued by State Farm to McGowan. McGowan's insurance policy contained the following relevant provisions:

**BUSINESS LIABILITY**

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments. This insurance applies only:

1.     to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period[.]

. . .

**RIGHT AND DUTY TO DEFEND**

We will have the right and duty to defend any claim or **suit** seeking damages payable under this policy even though the allegations of the **suit** may be groundless, false, or fraudulent. The amount we will pay for damages is limited as described in the Limits of Insurance.

. . .

**DEFINITIONS**

. . .

3.     **bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from the **bodily injury**, sickness, or disease at any time;

. . .

11.    **occurrence** means:
       a.     an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**[.]
       . . .

(Emphases in original.)

McGowan sold the building to Mohammed Hakeem in May of 2001, but Dutton and Amy continued to occupy their apartment after the sale. In September of 2001, McGowan canceled his State Farm insurance policy. The cancellation was effective as of August 1, 2001.

During a thunderstorm in October of 2001, a decaying tree next to the building fell through the roof of Dutton's apartment, killing Amy. Dutton subsequently filed a lawsuit in state court to recover damages against McGowan. Her complaint alleged that McGowan had been negligent during the time that he owned the property by failing to correct the dangerous condition created by the presence of the rotting tree, and that McGowan's negligence caused or contributed to Amy's death.

Upon learning of the lawsuit, McGowan demanded that State Farm defend and cover the claims against him in the state-court action. State Farm refused. It also filed a declaratory judgment action in the United States District Court for the Eastern District of Tennessee regarding its coverage and defense obligations to McGowan. State Farm subsequently filed a motion for summary judgment on the ground that the insurance policy at issue was an "occurrence" policy, and that McGowan was not entitled to coverage because the occurrence that resulted in Amy Dutton's death did not take place during the policy period. McGowan filed a cross-motion for summary judgment, arguing that the occurrence did in fact take place during the policy period. The district court denied State Farm's motion and granted McGowan's, holding that State Farm had a duty under the policy to defend McGowan in the underlying lawsuit. State Farm has timely appealed.

## II. ANALYSIS

### A.    Standard of review

We review a district court's grant of summary judgment de novo. *Minadeo v. ICI Paints,* 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.    The district court did not err in concluding that McGowan's alleged negligence was an occurrence that took place during the policy period

With subject matter jurisdiction being based entirely upon diversity of citizenship, the parties do not dispute that Tennessee law applies to this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Tennessee caselaw requires that insurance policies be construed in the same manner as any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). Although the language of the policy should be "understood in its plain, ordinary and popular sense," *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975), any ambiguous language that purports to limit the coverage of the policy must be construed against the insurance company and in favor of the insured. *Hutchison*, 15 S.W.3d at 815.

An insurance company's duty to defend its insured is largely determined by the allegations in the complaint filed against the insured. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994). If the allegations in the complaint "are within the risk insured against and there is a potential basis for recovery," the insurance company is obligated to defend its policyholder. *Id.* The insurance policy in question in the present case is an "occurrence" policy. *See State ex rel. McReynolds v. United Physicians Ins. Risk Retention Group*, 921 S.W.2d 176, 177 n.1 (Tenn. 1996) ("[A]n 'occurrence policy' is a policy in which the coverage is effective if the negligent act or omitted act occurs within the policy period, regardless of the date of discovery."). It provides coverage for "bodily injury . . . caused by an *occurrence* which takes place . . . during the policy period." (Emphasis added.) None of the parties dispute that Amy Dutton suffered a

"bodily injury" as defined by the policy. The question, therefore, is whether her injury was caused by an occurrence that took place during the policy period. McGowan contends that his failure to inspect and remove the decaying tree while he owned the apartment building was an occurrence within the meaning of the policy, but State Farm argues that the occurrence did not take place until the tree actually fell onto the building and killed Amy.

The insurance policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury." As the district court noted, "[n]o party addressed the exposure-to-harmful-conditions aspect of the policy's definition for 'occurrence,' so the [issue is] whether the alleged negligence constitutes an accident."

The Tennessee Supreme Court addressed the meaning of the term "accident" as used in an insurance policy in *Gassaway v. Travelers Insurance Co.*, 439 S.W.2d 605 (Tenn. 1969). *Gassaway* involved an insurance policy that was issued to the developer of a residential subdivision. The policy provided coverage for property damage "caused by accident." *Id.* at 606. An underground storm sewer, not disclosed by the developer to the purchasers of the lots, caused serious damage to a subdivision house when the foundation began to settle as a result of discharge from the sewer. Although the court acknowledged that the developer did not intend the damage, it held that such settling was reasonably foreseeable and thus not an "accident" as used in liability insurance policies. The court defined an accident as "an event not reasonably to be foreseen, unexpected and fortuitous." *Id.* at 608. It stated that a determination of "[w]hether the damages suffered resulted from an accident so as to make the insurer liable requires the examination of the entire factual situation." *Id.* at 607.

The *Gassaway* court cited a number of cases in which an insured's negligence qualified as an accident under policies containing similar language. Among the cases cited were *American Employers Insurance Co. v. Knox-Tenn Equipment Co.*, 377 S.W.2d 573 (Tenn. 1963) (holding an insurer liable for damage caused when a contractor used drill bits that were too big because the supplier (the insured) did not know that the manufacturer had changed the size of the bits); *Bundy Tubing Co. v. Royal Indemnity Co.*, 298 F.2d 151 (6th Cir. 1962) (holding the insurance company responsible for losses caused by defective steel tubing used in a hot water heating system because the seller of the tubing (the insured) did not know that it was faulty and could not have foreseen the resulting damages); and *Ritchie v. Anchor Casualty Co.*, 286 P.2d 1000 (Cal. Ct. App. 1955) (finding the insurance company liable for damages caused by the sale of rancid oil by its insured because the insured did not know that the oil was rancid).

The court in *Gassaway* distinguished the above cases from the one before it on the grounds that the developer in *Gassaway* knew of the risk created by the drainage facilities and could have reasonably foreseen the damage that ultimately occurred. It concluded that, because the damages caused by the developer's failure to disclose the presence of the sewer were not the result of an accident, the insurance company was not obligated to provide coverage. *Gassaway*, 439 S.W.2d at 609-10.

As noted by the district court in the present case, the complaint in the underlying state-court action "alleges that McGowan failed to adequately inspect and resolve the condition of the tree." The district court concluded that "McGowan's alleged negligence does not suggest any intent to cause harm or to overlook a risk of harm . . . . The underlying lawsuit . . . suggests he did not know the tree's condition or know that allowing it to remain would pose a risk of harm to the occupants of the apartment building." Because the fall of the tree was unforeseen, unexpected, and fortuitous, McGowan's negligent omission constituted an accident as the term is used in insurance policies. *See Standard Constr. Co. v. Md. Cas. Co.*, 359 F.3d 846, 851 (6th Cir. 2004) (holding that an insured's negligence was an occurrence under an insurance policy because it was unintended and

unforeseen) (applying Tennessee law); *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 510 (6th Cir 2003) (holding that an employer's negligence in hiring and retaining an employee who caused a customer's death was an accident and thus an occurrence under the employer's insurance policy) (applying Kentucky law).

> State Farm, however, argues that it does not have a duty to defend McGowan because

> [a]n "occurrence" for coverage purposes is the point in time when actionable negligence arises, which is when an injury or damage is caused and results from the breach of duty owed. The ultimate question for coverage is not when McGowan may have committed a negligent act, but instead the time when his acts or omissions may have arisen to the level of negligence actionable at law.

In support of its argument, State Farm correctly recites the elements of actionable negligence. *See McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 894 (Tenn. 1996) ("To establish negligence, one must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."). It also correctly concludes that McGowan's failure to maintain the apartment premises did not mature into a cause of action for negligence until his breach of duty caused an injury (Amy Dutton's death). But State Farm does not provide any support for its assertion that the insurance policy requires *actionable negligence* for coverage. Rather, the policy simply requires "bodily injury . . . caused by an occurrence which takes place . . . during the policy period."

> State Farm repeatedly asserts that a negligent act alone is not an occurrence. To bolster its argument, it notes that the insurance policy provides that the occurrence must result in "bodily injury" in order for State Farm to be liable. This is undoubtedly true, but the policy does not specify *when* the bodily injury must take place. Moreover, the Tennessee Supreme Court has specifically held that "the negligent acts of an insured can be an accident as this word is used in insurance policies." *Gassaway*, 439 S.W.2d at 607. So even though an injury must manifest itself in order to trigger State Farm's obligation to defend McGowan, the policy requires only that the *occurrence* must take place during the policy period, not the *resulting injury*.

> State Farm attempts to distinguish *Gassaway* from the present case on the ground that "[t]he *Gassoway* [sic] decision did not address the question of *timing* for policy application purposes." It then cites the following three cases that stand for the proposition that the term "occurrence" means the time when the claimant is injured, not the time of the negligent act or omission: *State Auto Mutual Insurance Co. v. Shelby Mutual Insurance Co.*, No. 1162, 1988 WL 67155, at *3 (Tenn. Ct. App. June 30, 1988) (unpublished) (holding that "coverage of property damage caused by an occurrence as defined in the policy is limited to damage occurring during the policy period"); *Monticello Insurance Co. v. Kentucky River Community Care, Inc.*, No. 98-5372, 1999 WL 236190, at *4 (6th Cir. Apr. 14, 1999) (unpublished) (noting that the "customary rule" is that the occurrence of an accident is when the damage occurs, not the wrongful act) (applying Kentucky law); and *Shreckengast v. State Farm Fire & Casualty Co.*, No. 97C-06-015 HDR, 1998 WL 731566, at *3 (Del. Super. Ct. May 18, 1998) (unpublished) (holding that "the 'occurrence' is not the time of the negligent act, but the time when the complaining party actually suffered damage").

> Two of these cases, *State Auto Mutual Insurance Co.* and *Monticello Insurance Co.,* are readily distinguishable from the present case in that the policies at issue in both cases specifically limited coverage based on the timing of the injury. *See State Auto Mut. Ins. Co.*, 1988 WL 67155, at *1 ("Property damage is defined as the destruction of tangible property which occurs *during the policy period*.") (emphasis added); *Monticello Ins. Co.*, 1999 WL 236190, at *1 ("The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as

damages *because of injury* to which this insurance applies caused by a medical incident *which occurs during the policy period*.") (emphasis added). The State Farm policy at issue here does not contain a similar limitation. Instead, it provides that coverage applies to McGowan's obligation to pay damages "because of bodily injury . . . caused by an occurrence which takes place . . . during the policy period," and further provides that "bodily injury means bodily injury, sickness or disease sustained by a person, including death resulting from the bodily injury, sickness, or disease at any time."

State Farm argues that the words "at any time" in the definition of "bodily injury" are intended to clarify that *death* resulting from an injury need not occur during the policy period. It maintains that the mortal injury must occur during the policy period for coverage to apply, even if the injured individual does not die until after the expiration of the policy. We agree that the absence of a comma before the phrase "at any time" suggests that State Farm may have intended for the phrase to modify "death" and not "bodily injury." On the other hand, we can also see how one might reasonably read the definition to mean that the injury itself can occur at any time. In that case, a plausible interpretation of the policy would be that the occurrence must take place during the policy period, but that the resulting injury can happen either during the policy period or after the policy has expired.

The policy is therefore ambiguous as to when the injury must occur. Tennessee law requires that ambiguities of this nature must be resolved in favor of the insured. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 815 (Tenn. 2000). We further note that State Farm easily could have included explicit language limiting coverage based on the timing of the injury, but it did not do so. State Farm's argument that both the negligent act and the injury must occur during the policy period is therefore unpersuasive.

Turning now to the third case relied on by State Farm, the unpublished Delaware decision in *Shreckengast*, we acknowledge that the facts are strikingly similar to those in the present case. In *Shreckengast*, a tree fell onto an apartment building owned by the plaintiffs, causing personal injuries and significant property damage. The insurance policy issued to the plaintiffs provided for coverage of an "occurrence which takes place during the policy period" and defined "occurrence" in the same terms as in the present case. Concluding that the "occurrence" was the falling of the tree, rather than the deterioration of the tree's roots, the Delaware court held that the plaintiffs could not recover under the policy "because the triggering 'occurrence' took place after the policy terminated." 1998 WL 731566, at *3.

*Shreckengast* is nevertheless unpersuasive for several reasons. Aside from being an unpublished decision from another jurisdiction, the case does not mention the policy's definition of "bodily injury," which is relevant because the definition in the present case arguably provides that the injury can occur "at any time." Moreover, *Shreckengast* fails to resolve the ambiguities in the policy in favor of the insured, as Tennessee law requires. *See Hutchison*, 15 S.W.3d at 815.

In the present case, because we conclude that the meaning of the term "occurrence" is ambiguous, the policy language that limits coverage must be construed in favor of the insured. *See id.* We therefore resolve any doubts regarding whether the occurrence took place within the policy period in favor of McGowan.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.