**THE TRAVELERS INDEMNITY
COMPANY OF AMERICA
et al.**

v.

**MOORE & ASSOCIATES, INC.**

Supreme Court of Tennessee,
at Nashville.

*Oct. 6, 2006 Session.*

March 7, 2007.

Kenneth S. Schrupp, Nashville, Tennessee, and Linda B. Foster and Paul Owens, Atlanta, Georgia, for the appellants, The Travelers Indemnity Company of America, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, and The Phoenix Insurance Company.

Eugene N. Bulso, Jr., Nashville, Tennessee, for the appellee, Moore & Associates, Inc.

John W. Wagster, Nashville, Tennessee, and Laura A. Foggan and John C. Yang, Washington, D.C., for the amicus curiae, Complex Insurance Claims Litigation Association.

Christopher W. Martin and Levon G. Hovnatanian, Houston, Texas, and Daniel

Hayes Puryear, Nashville, Tennessee, for the amicus curiae, Hartford Fire Insurance Company.

# OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and CORNELIA A. CLARK and GARY R. WADE, JJ., and ADOLPHO A. BIRCH, JR., Sp.J., joined.

This case is before us on appeal of the trial court's grant of summary judgment in which the trial court held that the appellants have a duty to defend the appellee under the terms of a commercial general liability policy. We granted the appeal in this case to determine: 1) whether an insured contractor's defective workmanship may constitute an "occurrence" under the terms of the "insuring agreement" of a commercial general liability policy; 2) whether damages resulting from faulty workmanship are "property damage"; and 3) whether damages to the insured contractor's work are excluded from coverage if those damages are caused by the faulty workmanship of a subcontractor. We conclude that defective workmanship may constitute an "occurrence." We also conclude that damages caused by faulty workmanship are "property damage." We further conclude that damages resulting from the faulty workmanship of a subcontractor are not excluded from coverage. Therefore, we hold that under the language of the commercial general liability policy in this case, the appellants have a duty to defend the appellee against a claim that water penetration resulting from the faulty workmanship of a subcontractor caused damages to the appellee's work. Accordingly, we affirm the trial court's grant of summary judgment.

## I. Factual and Procedural History

The facts relevant to our analysis in this case are undisputed. The Travelers In-demnity Company of America, Travelers Property Casualty Company of America, and the Phoenix Insurance Company (collectively referred to as "Travelers") issued three consecutive one-year commercial general liability policies to Moore & Associates, Inc. ("Moore"), a construction company. The policies contain substantially similar language and collectively cover the period from December 31, 2000, to December 31, 2003.

During the period covered by the policies, Moore entered into a contract with Hilcom Partners, Ltd. ("Hilcom") in which Moore agreed to be the design and building contractor for the construction of a hotel in Houston, Texas. As part of the construction project, Moore hired a subcontractor to provide and install the hotel windows. Moore completed construction in 2002. On January 10, 2003, Hilcom filed a demand for arbitration alleging the following:

> Poor and negligent design, supervision, and implementation of the window installation, resulting in water and moisture penetration, which in turn has caused pervasive premature deterioration of and damage to other components of the interior and exterior wall structure, and some room finishes and fixtures. Mold has been found in some locations. Rooms have had to be taken out of service for mold remediation and for water damage repair.

Travelers filed suit against Moore seeking a declaratory judgment that Travelers has no duty to defend or indemnify Moore in the arbitration proceeding. The parties filed cross motions for summary judgment, and the trial court granted summary judgment in favor of Moore, finding that Travelers has a duty to defend Moore. The trial court reserved its ruling on the issue of Travelers' duty to indemnify. The

Court of Appeals affirmed. We granted review.

## II.  Analysis

■ Issues regarding an insurer's duty to defend are matters of law and may be resolved by summary judgment when there are no genuine issues as to any material fact. *Standard Fire Ins. Co. v. Chester–O'Donley & Assocs., Inc.,* 972 S.W.2d 1, 6 (Tenn.Ct.App.1998). Because there are no material facts in dispute, the sole issue for our determination is whether the trial court erred as a matter of law when it concluded that Travelers has a duty to defend Moore in the arbitration proceeding. This Court reviews a trial court's interpretation of contract language de novo with no presumption of correctness. *Allstate Ins. Co. v. Watson,* 195 S.W.3d 609, 611 (Tenn.2006).

■ We previously have held that whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. *St. Paul Fire & Marine Ins. Co. v. Torpoco,* 879 S.W.2d 831, 835 (Tenn.1994) (quoting *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.,* 373 A.2d 247, 249 (Me.1977)). Accordingly, the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. *Id.* The duty to defend arises if even one of the allegations is covered by the policy. *See Drexel Chem. Co. v. Bituminous Ins. Co.,* 933 S.W.2d 471, 480 (Tenn.Ct.App. 1996). The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact. *Torpoco,* 879 S.W.2d at 835. Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured. *Dempster Bros., Inc. v. U.S. Fid. & Guar. Co.,* 54 Tenn.App. 65, 388 S.W.2d 153, 156 (1964). Therefore, the central issue in this case is whether Hilcom's demand for arbitration alleges damages that are within the risk covered by the policy Travelers issued to Moore.

### A.  The Policy

The policy at issue in this case is a commercial general liability policy ("CGL"). CGLs are designed to protect an insured against certain losses arising out of business operations. *Chester–O'Donley,* 972 S.W.2d at 6. These policies have been used since 1940. *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 268 Wis.2d 16, 673 N.W.2d 65, 73 (2004). Most CGLs are written on standardized forms developed by an association of domestic property and casualty insurers known as the Insurance Services Offices. *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 772, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993). CGLs are divided into several components, including the "insuring agreement," which "sets the outer limits of an insurer's contractual liability," and the "exclusions," which "help define the shape and scope of coverage" by excluding certain forms of coverage. *Chester–O'Donley,* 972 S.W.2d at 7. The policy terms of CGLs have been and continue to be frequently litigated. *See generally,* William D. Lyman, *Is Defective Construction Covered Under Contractors' and Subcontractors' Commercial General Liability Insurance Policies? Selected Issues,* 525 PLI/Real 151 (2006). Unfortunately, this litigation has resulted in much confusion and little consensus. *Id.* at 159, 165.

■ Our interpretation of insurance contracts, such as the CGL in this case, is governed by the same rules of construction used to interpret other contracts.

*McKimm v. Bell,* 790 S.W.2d 526, 527 (Tenn.1990). An insurance contract "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.,* 204 S.W.3d 758, 768 (Tenn.2006). In addition, "[i]nsurance policies should be construed as a whole in a reasonable and logical manner." *Chester–O'Donley,* 972 S.W.2d at 7. When the insurance contract in question is a CGL, the "insuring agreement" should be construed before the "exclusions" to avoid confusion and error. *Id.*

The terms of the policy in this case are those of the standard CGL. The "insuring agreement" of the policy in this case provides in pertinent part:

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

    b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory...."

An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property."

The CGL also provides that certain damages are excluded from coverage. The most relevant "exclusion" to the instant case is the "your work" exclusion, which provides that there is no coverage for " '[p]roperty damage' to 'your work' arising out of it or any part of it." "Your work" is defined as "work or operations performed by you or on your behalf." The "your work" exclusion, however, includes an exception for situations where "the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

### B. *Vernon Williams and Weedo*

A proper resolution of the issues in this case requires a close examination of our decision in *Vernon Williams & Son Constr., Inc. v. Cont'l Ins. Co.,* 591 S.W.2d 760 (Tenn.1979), as well as the decision upon which it relies, *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 791 (1979). In *Vernon Williams,* a construction company failed to ascertain the weight-bearing capacity of the soil upon which it built a warehouse. As a result of this failure, a wall and the floor of the warehouse developed cracks. The property owner filed suit and was awarded damages for a breach of contract based on the contractor's failure to complete the structure in a workmanlike manner. The contractor in turn filed suit against its insurer to enforce the insurer's obligation to defend under the terms of its CGL, a predecessor to the CGL in this case. We held that the insurer had no duty to defend because "the standard comprehensive general liability policy does not provide coverage to an insured-contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself." *Vernon Williams,* 591 S.W.2d at 765. Our holding was based on the New Jersey Supreme Court's opinion, *Weedo.* We quoted extensively from that opinion:

"The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.

"There exists another form of risk in the insured-contractor's line of work, that is, injury to people and damage to property caused by faulty workmanship. Unlike business risks of the sort described above, where the tradesman commonly absorbs the cost attendant upon the repair of his faulty work, the accidental injury to property or persons substantially caused by his unworkmanlike performance exposes the contractor to almost limitless liabilities....

"... The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself.... The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."

*Vernon Williams*, 591 S.W.2d at 763–64 (quoting *Weedo*, 405 A.2d at 791 (internal quotation marks and citation omitted)). Travelers argues that this language stands for the proposition that damages to the work of the insured arising from faulty workmanship can never be the result of an "occurrence" as defined by the policy. We disagree.

Travelers' argument fails to recognize that the analysis in both *Vernon Williams* and *Weedo* is based upon the "exclusions" in the respective CGLs rather than the "insuring agreement." *See, e.g., Am. Girl Inc.*, 673 N.W.2d at 77 (observing that the analysis in *Weedo* was based on the "exclusions"). Both *Vernon Williams* and *Weedo* discuss at length the applicable CGL's "exclusions" against "[p]roperty damage to the [n]amed insured's products arising out of such produc[ts] or any part of such products" and "[p]roperty damage to work performed by or on behalf of the [n]amed insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."[1] *Vernon Williams*, 591 S.W.2d at 762; *Weedo*, 405 A.2d at 792. Neither *Vernon Williams* nor *Weedo* analyzes whether the damages at issue were caused by an "occurrence."

Although our holding in *Vernon Williams* was stated broadly, it is clear that we relied upon the "exclusions" in the CGL to exclude the damages resulting from faulty workmanship. In *Weedo*, the insurer conceded that the "insuring agreement" granted coverage and asserted that the sole issue for determination was whether the "exclusions" precluded coverage. *Weedo*, 405 A.2d at 790 n. 2. Therefore, neither *Weedo* nor *Vernon Williams* is relevant to the determination of whether there has been an "occurrence" under the terms of the "insuring agreement." Rather, both cases address the application of the CGL's "exclusions." Reliance upon a CGL's "exclusions" to determine the meaning of "occurrence" has resulted in "regrettably overbroad generalizations" concerning CGLs. *Am. Girl Inc.*, 673 N.W.2d at 76. We therefore decline to base our analysis of the "occurrence" requirement upon the "exclusions" in a CGL.

---

**1.** These "exclusions" are similar to the "your work" exclusion in the CGL in the instant case.

### C. "Insuring Agreement" and Definitions of "Occurrence" and "Accident"

█ The meaning of "occurrence" in a modern CGL is a matter of first impression for this Court. *But see Gen. Ins. Co. of Am. v. Crawford*, 635 S.W.2d 98, 99 (Tenn.1982) (interpreting an earlier CGL containing a different definition of "occurrence"). The "insuring agreement" of the policy provides that Travelers will defend Moore against any suit seeking damages "caused by an 'occurrence.'" The primary issue is whether the water penetration resulting from faulty window installation is an "occurrence" as defined by the policy.[2] An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is undefined by the policy.

█ We have held that when used in a liability insurance policy the word "accident" refers to "an event not reasonably to be foreseen, unexpected and fortuitous." *Gassaway v. Travelers Ins. Co.*, 222 Tenn. 649, 439 S.W.2d 605, 608 (1969). In *Gassaway*, we also construed the word "accident" to include the "negligent acts of the insured causing damage which is undesigned and unexpected." *Id.* at 607 (quoting *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400 (Tex.1967)). This construction is consistent with the ordinary use of the word. *See Black's Law Dictionary* 15 (7th ed.1999) (noting that "[t]he word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation") and *The Oxford English Dictionary* 74 (2d ed.1989) (defining accident as "[a]nything that happens without foresight or expectation"). We therefore conclude that the term "accident" as used in

the CGL in this case means "an unforeseen or unexpected event." Furthermore, we consider foreseeability from the perspective of the insured. *See Gassaway*, 439 S.W.2d at 608–09. Therefore, the policy in this case provides coverage to any "property damage" caused by an event that was not foreseeable to Moore, including continuous exposure to substantially the same generally harmful conditions.

Travelers argues that the water penetration was foreseeable to Moore because water penetration is a natural consequence of improperly installed windows. We are unpersuaded that the foreseeability of damages should be determined under an assumption that the windows would be installed improperly. If foreseeability is determined from the negligent completion of the project, then the negligent acts of the insured will almost never be "accidents" because, by definition, negligence requires that damages be foreseeable. *See Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 670 n. 18 (Tex.App.—Houston,2006), *petition for review filed* May 11, 2006. Holding that a negligent act does not constitute an "accident" is inconsistent with our previous holding that an "accident" may include the negligent acts of the insured. *See Gassaway*, 439 S.W.2d at 607. Other courts have observed that construing "accident" in a manner that does not cover the insured's negligence would render a CGL almost meaningless. *Bundy Tubing Co. v. Royal Indem. Co.*, 298 F.2d 151, 153 (6th Cir.1962); *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 679 A.2d 540, 549 (1996). We decline to adopt a construction of "accident" which would so drastically limit the coverage under a CGL.

---

**2.** Although Hilcom has alleged other defects, the parties' arguments primarily address the defects associated with the installation of the windows.

Therefore, the determination of whether an "accident" has occurred under the terms of a CGL requires us to determine whether damages would have been foreseeable if the insured had completed the work properly. An example is instructive. Travelers concedes that if a contractor improperly installs a shingle that later falls and hits a passerby, this event is unforeseeable and is an "occurrence" or "accident." However, Travelers simultaneously insists that if a contractor improperly installs windows that leak and cause flood damage to the hotel, this event is foreseeable because it is a natural consequence of improperly installed windows. We are unpersuaded by this distinction. A shingle falling and injuring a person is a natural consequence of an improperly installed shingle just as water damage is a natural consequence of an improperly installed window. If we assume that either the shingle or the window installation will be completed negligently, it is foreseeable that damages will result. If, however, we assume that the installation of both the shingle and the window will be completed properly, then neither the falling shingle nor the water penetration is foreseeable and both events are "accidents." Assuming that the windows would be installed properly, Moore could not have foreseen the water penetration. Because we conclude the water penetration was an event that was unforeseeable to Moore, the alleged water penetration is both an "accident" and an "occurrence" for which there is coverage under the "insuring agreement."

Travelers expresses concern that our holding will transform the common CGL into a performance bond. However, the recognition that damages may result from an "occurrence" is only the first step in determining whether damages are afforded coverage under a CGL. Coverage for damages granted under the "insuring agreement" may be precluded by an "exclusion." Therefore, our acknowledgment that damages arising from faulty workmanship may be the result of an "occurrence" does not convert the CGL into a performance bond.

### D. *"Insuring Agreement" and the Definition of "Property Damages"*

■ Travelers also argues that our holding in *Vernon Williams* requires a conclusion that the damages suffered by Hilcom are not "property damage" as defined in the "insuring agreement." In *Vernon Williams*, we stated that a "claim limited to faulty workmanship or materials does not constitute 'injury to or destruction of tangible property.'" 591 S.W.2d at 763 (quoting *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal.App.3d 888, 145 Cal. Rptr. 836, 839 (Cal.Ct.App.1978)). Because the result in *Vernon Williams* was based upon other grounds—the CGL "exclusions"—we did not apply this rule to the facts of that case or expound upon its implications for future cases. *Vernon Williams*, however, cited with approval *St. Paul Fire & Marine Insurance Co. v. Coss*, a case that is instructive in our analysis. In that case the court held as follows:

We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy. For example, if an automobile crash results from the failure of its defective tire, the defective component can be said to have caused 'property damage' to the finished product. If, however, some of the tires purchased by the automobile manufacturer are found to be defective and the manufacturer therefore withdraws its cars from the market, there has not

been 'injury to or destruction of tangible property[.]'

*St. Paul Fire*, 145 Cal.Rptr. at 839 (quoting *Hamilton Die Cast, Inc. v. U.S. Fid. & Guar. Co.*, 508 F.2d 417, 419–20 (7th Cir. 1975)). This passage makes clear that a "claim limited to faulty workmanship or materials" is one in which the sole damages are for replacement of a defective component or correction of faulty installation.

We conclude that Hilcom's claim is not limited to faulty workmanship and does in fact allege "property damage." Moore's subcontractor allegedly installed the windows defectively. Without more, this alleged defect is the equivalent of the "mere inclusion of a defective component" such as the installation of a defective tire, and no "property damage" has occurred. The alleged water penetration is analogous to the automobile accident that is caused by the faulty tire. Because the alleged defective installation resulted in water penetration causing further damage, Hilcom has alleged "property damage." Therefore, we conclude that Hilcom has alleged damages that constitute "property damage" for purposes of the CGL.

### E. The "Your Work" Exclusion

■ Finally, we examine whether the damages alleged by Hilcom are precluded from coverage by the "exclusions." The policy excludes the following damages from coverage:

1. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"Your work" is defined as "work or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations."

Applying the contract language to the facts of this case, we conclude that the entire hotel meets the definition of "your work" because the entire construction project was performed by Moore or by subcontractors on Moore's behalf. Therefore, all damages to the hotel *initially* are excluded by the "your work" exclusion. This exclusion is consistent with *Vernon Williams'* holding that CGL "exclusions" preclude coverage of an insured-contractor's faulty workmanship when the damages claimed are the cost of correcting the work itself. Were the CGL in this case identical to the CGL construed by this Court in *Vernon Williams*, our analysis would end here. The CGL in this case, however, contains a subcontractor exception to the "your work" exclusion. This difference reflects a change in CGL policy language, which, in this case, affects the relevance of the holding in *Vernon Williams*. See *Rando v. Top Notch Props., L.L.C.*, 879 So.2d 821, 825 (La.Ct. App.2004) (noting that "[i]n some cases, courts have misapplied policies by seizing upon conclusions in earlier cases without realizing that the policy language had been revised"). The subcontractor exception provides that any damages arising out of the work performed by a subcontractor fall outside the "exclusion" and are covered under the CGL. It is alleged that the installation of the windows was performed by subcontractors hired by Moore. Therefore, damages resulting from the subcontractors' faulty installation of the windows are not excluded from coverage, even if those damages affected Moore's work.

### III. Conclusion

■ An "occurrence" is defined as an "accident," which we hold is an event that

is unforeseen by the insured. Because Moore could not have foreseen the water penetration had the work been completed properly, we conclude that the water damages were the result of an "occurrence." In addition, we hold that claims alleging only damages for replacement of a defective component or correction of faulty installation do not allege "property damage." Because the damages alleged by Hilcom are not limited to faulty workmanship, we conclude that Hilcom has alleged "property damages." Finally, we hold that damages to the insured contractor's work are not excluded from coverage if those damages are caused by the faulty workmanship of a subcontractor. To the extent that Hilcom alleges damages resulting from the faulty workmanship of a subcontractor, we conclude that these damages are not excluded from coverage. We therefore hold that Hilcom has alleged an "occurrence" resulting in "property damage," that the alleged damages are not excluded from coverage, and that Travelers has a duty to defend Moore. Accordingly, we affirm the trial court's grant of summary judgment. Costs of this appeal are taxed to the appellants, Travelers Indemnity Company of America, Travelers Property Casualty Company of America, and the Phoenix Insurance Company, and their sureties, for which execution may issue if necessary.