In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3463

WESTFIELD INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

SHEEHAN CONSTRUCTION COMPANY, INC., *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:05-cv-0617-RLY-TAB—**Richard L. Young**, *Judge.*

ARGUED APRIL 8, 2009—DECIDED APRIL 29, 2009

Before EASTERBROOK, *Chief Judge,* and WOOD and
WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Sheehan Construction Co.
was the general contractor for the Crystal Lake residential
subdivision in Indianapolis. A few years after moving in,
the owners began to notice moisture in places that should
have been dry. An investigation traced the problem
to defective work by one of Sheehan's subcontractors.
Litigation in state court ended with a settlement of

about $2.8 million. Sheehan wants its insurer, Westfield Insurance Co., to indemnify that expense. (The settlement assigned to the homeowners Sheehan's rights in the policy, but for simplicity we refer to Sheehan.) Westfield declined and filed this declaratory-judgment action. Indiana supplies the rules of decision.

Westfield's policy covers commercial general liability—that is, bodily injury and property damage attributable to accidents. The policy would indemnify Sheehan for loss caused by construction machinery that damaged adjacent property or for an injury to a passer by caused by a misplaced nail. But indemnifying a general contractor for negligent work performed by a subcontractor is something else again. The moral hazard would be considerable: the prospect of indemnity would lead the general contractor to save money by hiring substandard subcontractors, then turning to the insurer to fix the customers' homes. The district court held that several definitions and exclusions in Westfield's policy show that its coverage is limited to accidents of the sort we have mentioned, and it granted judgment in Westfield's favor. 580 F. Supp. 2d 701 (S.D. Ind. 2008). To simplify the exposition we assume for the sake of argument that the sort of loss the homeowners encountered was "property damage" caused by an "occurrence" and shall examine the effect of the policy's "your work" exclusion.

The policy does not cover property damage to a contractor's own work. An exclusion says that "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products–completed operations

hazard' " is outside the policy's scope. It adds that this exclusion applies to "[t]he cost of repairing or re-placing:"

(1) "Your work" defectively or incorrectly done by you; or

(2) "Your product" manufactured, sold or supplied by you; unless the "property damage" is caused directly by you after delivery of "your product" or completion of "your work" and resulting from a subsequent undertaking.

The "work" or "product" of a general contractor is the whole project, so this language directly addresses the homeowners' loss. (The water did not damage separate property in the homes, such as TV sets or furniture.) But Sheehan replies that the problem stemmed not from *its* work but from the work of a subcontractor, and it observes that the insurance industry's standard-form commercial general liability policy was revised in 1986 to remove subcontractors' work from the definition of "your work" in this clause.

The standard form changed in 1986 by adding the phrase "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." But Sheehan did not purchase a policy on that form. It bought one that lacks the "does not apply to subcon-tractors' work" language. An endorsement to West-field's policy has a definitional clause, under which "your work" includes:

(1) Work or operations performed by you *or on your behalf*;

and

(2) Materials, parts or equipment furnished in connection with such work or operations.

Emphasis added. The italicized phrase means that subcontractors' work is included in the scope of "your work". This leaves only the question whether water damage is within the scope of the policy's "products–completed operations hazard". That's another defined term comprising "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except" for "[p]roducts that are still in your physical possession" and a list of other exclusions from this exemption. This "products–completed operations hazard" definition is designed to ensure that the policy covers accidents that occur while construction is under way, but not property damage caused by poor workmanship in a completed building. But that's exactly the sort of claim that was made and settled in the underlying litigation.

Sheehan scarcely tries to argue that the policy's actual language covers the loss that the homeowners incurred.[†]

---

[†] It did offer the view of a former insurance adjuster that he would have paid Sheehan's claim. The district court properly struck this affidavit. The "expert" conceded that he knew nothing about Indiana law, and at all events the interpreta-

(continued...)

Nor does Sheehan deny that several Indiana decisions, addressing functionally identical situations, have held that the insurer need not indemnify a general contractor. See, e.g., *Amerisure, Inc. v. Wurster Construction Co.*, 818 N.E.2d 998 (Ind. App. 2004); *R.N. Thompson & Associates, Inc. v. Monroe Guaranty Insurance Co.*, 686 N.E.2d 160 (Ind. App. 1997). Sheehan contends that these opinions are "outdated" (as if judicial decisions came stamped with expiration dates!) because of the 1986 change to the trade association's form policy. How a change in 1986 can supersede judicial decisions rendered in 1997 and 2004 is anyone's guess. And, to repeat, the policy that Sheehan actually purchased defines "your work" to include work performed on the general contractor's behalf. If Sheehan's work had been performed in Florida or Tennessee, under the 1986 standard form, then the casualty might be covered. See *United States Fire Insurance Co. v. J.S.U.B., Inc.*, 979 So. 2d 871 (Fla. 2007); *Travelers Indemnity Co. v. Moore & Associates, Inc.*, 216 S.W.3d 302 (Tenn. 2007). But in Indiana, under Westfield's policy, it is not covered. The premiums paid presumably reflect this difference.

---

(...continued)

tion of contracts is for the judge. See *Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898 (7th Cir. 1994); *Loeb v. Hammond*, 407 F.2d 779 (7th Cir. 1969). Contracts mean what they say when read in light of legal principles; what strangers to the parties' bargain would do is neither here nor there.

According to Sheehan, *T.R. Bulger, Inc. v. Indiana Insurance Co.*, 901 N.E.2d 1110 (Ind. App. 2009), effectively overrules *Amerisure* and *R.N. Thompson* and shows that it is entitled to indemnity. Sheehan says that *T.R. Bulger* is materially identical to this case. Yet *T.R. Bulger* reiterates rather than retreats from the holdings of *Amerisure* and *R.N. Thompson*. The insured won in *T.R. Bulger* because it was a subcontractor whose work had been damaged by the negligence of a different subcontractor. The "your work" exclusion in the subcontractor's policy did not cover the work of a *different* subcontractor. There was no moral hazard; one subcontractor does not choose another. Sheehan, however, was the project's general contractor, and the "your work" clause in its policy covered the work of all subcontractors it selected.

The parties' other arguments do not require discussion. We cannot refrain from remarking, however, that Sheehan's insistence that it is entitled to punitive damages because Westfield's denial of coverage was "in bad faith" is the sort of argument that calls into question the *bona fides* of all other contentions. How can an insurer exhibit "bad faith" by taking a position that not only follows the policy's language but also is endorsed by a district judge? We can imagine a procedural form of bad faith—refusal to take any stance on the policy's coverage while leaving the insured to fend for itself in the underlying litigation—but Westfield addressed Sheehan's claim with dispatch and filed a prompt declaratory-judgment suit to have the dispute resolved. Sheehan's insistence, even after losing on the merits in

the district court, that the insurer acted "in bad faith" implies that its strategy has been to strong-arm a settlement by *in terrorem* claims, rather than to vindicate its legal entitlements. Lawyers should think carefully about the message that their contentions convey to the court, as well as the effect they may have on the other litigants.

AFFIRMED