*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

FORREST CONSTRUCTION, INC.,
                *Plaintiff-Appellee*,

    v.

THE CINCINNATI INSURANCE COMPANY,
                *Defendant-Appellant*.

No. 11-6262

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:09-cv-1036—Aleta Arthur Trauger, District Judge.

Argued: October 2, 2012

Decided and Filed:  January 11, 2013

Before:  MERRITT, McKEAGUE, and STRANCH, Circuit Judges.

_____

### COUNSEL

**ARGUED:** John M. Neal, THE NEAL LAW FIRM, Knoxville, Tennessee, for Appellant.  Philip L. Robertson, Nashville, Tennessee, for Appellee.  **ON BRIEF:** John M. Neal, THE NEAL LAW FIRM, Knoxville, Tennessee, for Appellant.  Philip L. Robertson, Nashville, Tennessee, Mark M. Bell, WALLER, LANSDEN, DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellee.

_____

### OPINION

_____

MERRITT, Circuit Judge.  In this diversity case applying Tennessee law, defendant, The Cincinnati Insurance Company, appeals from a grant of summary judgment to its policyholder, plaintiff Forrest Construction, Inc.  Forrest Construction sued Cincinnati Insurance for refusing to defend Forrest pursuant to the terms of a commercial general liability policy after Forrest was sued in state court by customers for

whom it had built a residence in Brentwood, Tennessee. The case requires judicial interpretation of the coverage provisions of the policy for "property damage" and the "subcontractor exception" to the exclusion for "your work" in the policy. The district court found that Cincinnati Insurance had a duty to defend Forrest Construction. Cincinnati Insurance raises two questions on appeal. The first is whether Cincinnati Insurance was given sufficient notice of the facts giving rise to its obligation to defend. The second is whether the decision in *Travelers Indemnity Co. v. Moore & Associates, Inc.*, 216 S.W.2d 302 (Tenn. 2007), wrought a change in Tennessee law concerning the meaning of "property damage." For the following reasons, we affirm the judgment of the district court finding that Cincinnati Insurance had a duty to defend Forrest Construction.

## I. Facts

Plaintiff Forrest Construction, Inc. was the named insured on a commercial general liability policy with Cincinnati Insurance. In 2004, Forrest was hired to construct a home in Brentwood, Tennessee, for James and Debbie Laughlin. A dispute arose over the amount owed by the Laughlins to Forrest and Forrest filed suit against the Laughlins in Tennessee state court. The Laughlins countersued based on alleged defects in the workmanship of the construction, particularly the foundation. The countercomplaint against Forrest Construction alleged the following:

> 10. Among other items, the Laughlins discovered significant cracking in the foundation at the right rear corner of the dwelling, creating an unsafe and potentially life-threatening condition.
>
> . . .
>
> 14. Forrest recklessly performed, or caused to be performed, work of such poor workmanship that it created an unsafe condition, causing a potentially deadly collapse of the residence.
>
>  . . . .
>
> 19. Forrest recklessly constructed the foundation or recklessly caused to be constructed the foundation of the Laughlins' residence . . . .

Answer and Counter-Complaint filed in *Forrest Const. Co., LLC, v. James Laughlin, et al.*, Case No. 31153 (Williamson Cty., Tenn. Chancery Court Feb. 14, 2004) (attached to Complaint as Ex. B). Forrest Construction notified Cincinnati Insurance of the countercomplaint and requested defense.

Forrest Construction's policy with Cincinnati was a standard commercial general liability policy that obligated Cincinnati to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." It also provided that Cincinnati Insurance had a "duty to defend the insured against any 'suit' seeking those damages." Commercial General Liability Policy, at p. 1 (attached to Complaint as Ex. A). The policy "applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence.'" The policy excludes from coverage damage to "your work," which is work performed by the contractor or any work "arising out of it or any part of it." The "your work" exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *Id.* at 1-7.

The policy contains a "Definitions" section providing definitions for certain terms used in the policy. The relevant terms from the policy are defined as follows:

> 16.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.
>
> **. . . .**
>
> 20**.**    "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. . . . ; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
>  . . . .

26. "Your work"

a. Means:

(1) Work or operations performed by you or on your behalf . . . .

Commercial General Liability Coverage Form, at pp. 20-21.

In April 2005, Cincinnati Insurance sent Forrest Construction a nine-page letter refusing to defend Forrest Construction against the Laughlin claims, basing its denial on the exclusion in the policy for work done by the insured (the "your work" exclusion) and its position that the underlying complaint did not allege damage caused by a subcontractor, thereby rendering the subcontractor exception to the "your work" exclusion inapplicable. Denial Letter at pp. 6-7. Forrest Construction subsequently defended itself in state court and was ordered to pay damages to the homeowners due to the faulty construction.

In October 2009, Forrest Construction brought this suit against Cincinnati Insurance. The complaint contains claims for (1) breach of contract for failure to defend and indemnify; (2) declaratory judgment regarding Cincinnati Insurance's duty to defend and indemnify; (3) bad-faith denial of Forrest Construction's claim; and (4) violation of the Tennessee Consumer Protection Act. After both parties filed summary judgment motions, the district court found that Cincinnati Insurance had breached its contract with Forrest Construction when it failed to defend it in the state court action. Dist. Ct. Op. filed Aug. 8, 2010. Cincinnati Insurance timely appealed to this Court. The Laughlins intervened in this case in 2011 and they have since settled with Cincinnati Insurance and are not parties to this appeal.[1]

---

[1]On appeal, Forrest Construction has made the argument that Cincinnati Insurance's decision to settle with the Laughlins, who had intervened in the federal action because they claim the right to any funds that Forrest Construction might receive from Cincinnati Insurance, serves as an indemnification that negates or estops Cincinnati Insurance's argument that it did not have a duty to defend Forrest Construction in the state court action. This argument is a red herring. Any decision by Cincinnati Insurance to settle with the intervenors does not estop Cincinnati Insurance from continuing to argue that it did not have a duty to defend Forrest in the state court action.

**II. Analysis**

Under Tennessee law, which the parties agree controls this dispute, an insurer's duty to defend the insured is triggered "when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a *potential* basis for recovery." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) (emphasis added). Whether the duty is triggered is determined solely by looking at the allegations contained in the underlying complaint. *Id.* "[I]f even one of the allegations is covered by the policy," the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy. *Id.* The entire policy, including the insuring agreement, exclusions, exceptions and limitations, must be read as a whole and any ambiguity must be construed in favor of the insured. *Dempster Bros., Inc. v. U.S. Fid. & Guar. Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964) ("[W]here the allegations of the complaint against the insured are ambiguous or incomplete and it is doubtful whether . . . they state a cause of action within the coverage of the policy . . . , such doubt will be resolved in favor of the insured."); *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) ("An insurer may not properly refuse to defend an action against its insured unless 'it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or *potentially within* the policy's coverage.'") (emphasis added) (quoting *Glens Falls Ins. Co. v. Happy Day Laundry*, Shelby Law 22, 19784 T.V., 1989 WL 91082, at *1 (Tenn. Ct. App. Aug. 14, 1989)). Undertaking the duty to defend does not automatically lead to a duty to indemnify. The duty to defend is construed broadly, and is broader than the duty to indemnify, because insurance companies may protect themselves by filing motions for declaratory judgment requesting a court to decide whether coverage applies or by filing a "reservation of rights," which allows them to proceed with the defense but withdraw if it becomes evident that there is no duty to defend.

**A. Sufficient Allegations to Trigger the Duty to Defend**

For the duty to defend to arise, the underlying complaint must make sufficient allegations concerning the nature of the damages sought to trigger the duty to defend, or, keeping in mind that ambiguity is construed in favor of the insured, to alert Cincinnati Insurance to further inquire if the allegations are not clear. This means that Cincinnati Insurance must have received enough information from the allegations to understand that there had been an "occurrence" causing "property damage" and that no exclusions applied. The underlying complaint clearly alleges damage to the foundation caused by faulty workmanship on the part of Forrest Construction or another entity when it states, "Among other items, the Laughlins discovered significant cracking in the foundation at the right rear corner of the dwelling, creating an unsafe and potentially life-threatening condition," as well as alleging that poor workmanship "created an unsafe condition, causing a potentially deadly collapse of the residence." Laughlin Countercomplaint at ¶¶ 10, 14. Second, the underlying complaint also includes references to work done by an entity other than Forrest Construction when it alleges that "Forrest recklessly performed, *or caused to be performed*, work of such poor workmanship that it created an unsafe condition, causing a potentially deadly collapse of the residence," and "Forrest recklessly constructed the foundation, *or recklessly caused to be constructed* the foundation of the Laughlins' residence . . . ." *Id*. ¶¶ 14, 19 (emphasis added).

Despite this language, Cincinnati Insurance denied coverage, relying on the "your work" exclusion:

> "Your work" means "work or operations performed by you or on your behalf and materials, parts or equipment furnished in connection with such work or operations." . . . The construction of the claimants' house falls squarely within this definition, and would be considered the insured's "work." . . . Since all of [the Laughlins'] damages are alleged to arise from the insured's defective work, this exclusion will completely negate coverage. *We do offer one caveat—the exclusion does not apply to work performed by any subcontractors. The Counter-Complaint does not suggest that any of the work was performed by an entity besides the insured itself.*

Denial Letter, at pp. 6-7 (emphasis added) (attached to Complaint as Ex. C). Despite Cincinnati Insurance's pronouncement in its letter to the contrary, the underlying complaint refers twice to defective work performed by Forrest Construction "or caused to be performed." Forrest Construction correctly argues that the usual way a contractor would "cause" work to be performed is by hiring a subcontractor. *See Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 650 (9th Cir. 1988) (the phrase "or on behalf of" refers to the work of subcontractors). As acknowledged by Cincinnati Insurance in the denial letter, the "your work" exclusion does not apply to work done by subcontractors. The language of the underlying complaint sufficiently alleges that work may have been performed by another entity such that the subcontractor exception applies and Cincinnati Insurance should not have denied coverage on the ground that the work complained of fell within the "your work" exception.

## B. **"Property Damage" and the Travelers Case**

Cincinnati Insurance has changed the focus of its argument since it issued its denial letter to Forrest Construction in 2005.[2] In the district court, and on appeal, Cincinnati Insurance now contends that the intervening case of *Travelers*, 216 S.W.3d at 302, changed the law regarding what constitutes "property damage" for purposes of interpreting the policy.

In *Travelers*, the plaintiff contractor built a hotel and hired a subcontractor to install the windows. *Id.* at 304. After construction was completed, the hotel owner alleged that negligent window installation by a subcontractor had resulted in water damage and mold infestation inside the hotel rooms. *Id.* After Travelers Insurance denied coverage, the contractor sued Travelers, claiming Travelers had a duty to defend it against the claims by the hotel owner. The opinion clarified that "property damage,"

---

[2]Regardless of the ground on which Cincinnati Insurance may have based its denial of coverage in the letter, it explicitly reserved the right to make additional defenses at a later date, Denial Letter, at p. 8, and it was not estopped from making additional or different arguments after it was sued by Forrest Construction if it believes other grounds existed on which to deny coverage. *See Lewellyn v. State Farm Mut. Auto. Ins. Co.*, 438 S.W.2d 741, 742-43 (Tenn. 1969) (where insurance company reserved all defenses available to it under its policy, and there is no showing of harm to the insured because of the letter, the defenses of waiver and estoppel are not available to the insured) (citing 45 C.J.S. Insurance § 707, p. 677).

which is defined only as "injury to or destruction of tangible property," means something more than the replacement of a defective component or correction of a faulty installation. *Id*. at 309-10 (internal quotation marks omitted). In other words, installation of a defective component, such as installing a window that turns out to be defective, or negligent workmanship that results in a faulty foundation does not, standing alone, constitute "property damage" *unless* that defective component or negligent workmanship results in physical injury to some other tangible property.

Analyzing the allegedly faulty installation of the windows and the damage caused to the rest of the hotel by the faulty installation, the Tennessee Supreme Court determined that the underlying claim by the hotel owner against the contractor alleged "property damage":

> We conclude that [the hotel owner's] claim is not limited to faulty workmanship and does in fact allege "property damage." [The] subcontractor allegedly installed the windows defectively. Without more, this alleged defect is the equivalent of the "mere inclusion of a defective component" . . . and no "property damage" has occurred. . . . Because the alleged defective installation resulted in water penetration causing further damage, [the hotel owner] has alleged "property damage."

*Id*. at 310. Having concluded that the complaint alleged "property damage" caused by an "occurrence," the Tennessee Supreme Court then looked to the "your work" exclusion and determined that it applied because the entire hotel was built by the contractor. *Id*. But, because the windows were alleged to have been installed by a subcontractor, the subcontractor exception applied and the damages were not excluded from coverage. *Id*. Accordingly, Travelers Insurance had a duty to defend the contractor against the claims by the hotel owner brought in the underlying complaint. *Id*. at 311.

Relying on *Travelers*, Cincinnati Insurance argues that the underlying complaint filed by the Laughlins against Forrest Construction does not allege "property damage" because that term "requires damage to something other than the structure the contractor was hired to build, regardless of whether the work was performed by the general contractor or subcontractors." Appellant's Br. at 8.

Cincinnati Insurance misconstrues *Travelers*. *Travelers* did not effect a sea change in the law, but clarified that "property damage" occurs when one component (here, the faulty foundation) of a finished product (the house) damages another component. 216 S.W.3d at 309. *Travelers* did not clarify the law in any way that materially improved Cincinnati Insurance's position. This is not a case where the "sole damages" alleged were the "replacement of a defective component or correction of faulty installation." Dist. Ct. Op. at 15 (quoting *Travelers*, 216 S.W.3d at 309-10). The damage alleged went further to include other damage caused by the faulty foundation. The underlying complaint alleged that "*[a]mong other things*, the Laughlins discovered significant cracking in the foundation at the right rear corner of the dwelling, creating an unsafe and potentially life-threatening condition"; Forrest's workmanship "created an unsafe condition, causing a potentially deadly collapse of the residence"; the Laughlins "incurred damages in repairing said construction"; and that they were entitled to "such damages against [Forrest Construction] as they may prove at trial."

Countercomplaint at ¶¶ 10, 12, 14, 16, 21 and the Prayer for Relief.

The district court found that the allegations in the underlying complaint filed by the Laughlins against Forrest Construction were "ambiguous" regarding the extent of the damage to the Laughlins' house. Dist. Ct. Op. at 15. We agree with the district court. This language, however, while not a model of specificity as to the nature of the damages flowing from the faulty foundation (which it need not be in the complaint), implies that the faulty foundation caused damage elsewhere in and to the house and allegedly rendered the house unsafe to even enter, putting Cincinnati Insurance on notice that more than the foundation itself was affected by the faulty workmanship and that the Laughlins were alleging loss of use of their property. The Prayer for Relief is also very broad, requesting "such damages . . . as they may prove at trial." Because an ambiguous complaint must be interpreted in favor of providing coverage to the insured, the allegations in the underlying complaint sufficiently alleged "property damage" and Cincinnati Insurance should not have denied coverage to Forrest Construction—and this was the law in 2005 before *Travelers* was decided.

To interpret "property damage" as narrowly as Cincinnati Insurance suggests would mean that whenever a subcontractor's negligence led to damage of any part of the construction project, the insurer could deny recovery on the ground that it is excluded from the policy's initial grant of coverage. This interpretation would render meaningless both the "your work" exclusion and the subcontractor exception to the "your work" exclusion in the policy.

## C. Notice

Cincinnati Insurance also makes several arguments based on laches and late-notice theories to argue that Forrest Construction should have requested reconsideration after *Travelers*. Cincinnati Insurance argues that Forrest Construction was responsible for requesting reconsideration of Cincinnati Insurance's denial of coverage because *Travelers,* decided by the Tennessee Supreme Court two years after the denial letter was issued, changed the law concerning the subcontractor exception ("Had Forrest communicated with Cincinnati after *Travelers v. Moore* and advised that subcontractors were involved, it is probable that . . . Cincinnati would have agreed [to provide a defense.]" Def.'s Mem. in Support of Summary Judgment at 15.

First, *Travelers* did not change the law. At most, it clarified the law concerning the definition of "property damage." *See Travelers*, 216 S.W.3d at 310. Therefore, before the decision in *Travelers* was issued, Cincinnati Insurance had a duty to defend Forrest Construction under the plain language of the policy and the case law that existed in 2005.

Second, Cincinnati Insurance urges an approach that would create a new rule or standard by holding that insureds who have their claims denied "should bear the burden of requesting reevaluation of coverage after the applicable law changes." Cincinnati Insurance concedes that this would be a matter of first impression and that there is no case law supporting this position. Appellant's Br. at 26-27. Contrary to Cincinnati Insurance's claim, the law in this regard is quite clear. The insurer severs all the insured's responsibilities once it unequivocally denies coverage:

> An insurer's unqualified denial of liability . . . affects its rights under the policy. By doing so, it no longer has a right to receive notice of the accident, participate in negotiations for settlement, or otherwise require the cooperation of the insured . . . .

Rowland H. Long, *The Law of Liability Insurance* § 5.05[1]; *see also Webb v. Ins. Co. of N. Am.*, 581 F. Supp. 244, 249 (W.D. Tenn. 1984) (denial letter waives any further requirements under the policy as to notice or proof of loss). Specifically, "where [an] insurer breaches its contract by refusing to defend, and the insured then retains counsel to protect [itself], the insurer cannot . . . object to the insured's handling of the case." 14 *Couch on Insurance* § 202:7 (3d ed.). Forrest Construction did the only reasonable thing it could do under the circumstances: hire a lawyer and defend itself. Cincinnati Insurance tries to argue that it left open room for negotiation in the denial letter because the letter stated that Forrest Construction could contact Cincinnati Insurance if it disagreed with the denial. This is standard language in a denial letter and does not change the fact that the denial letter was unequivocal in its position. It should not be incumbent upon the insured to continue negotiations with the insurer once the denial letter has issued.

For the foregoing reasons, the judgment of the district court is affirmed.