# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 21, 2013 Session

## GREGORY E. HEARN ET AL. v. ERIE INSURANCE EXCHANGE

**Appeal from the Circuit Court for Wilson County**
**No. 15301      Clara W. Byrd, Judge**

---

**No. M2012-00698-COA-R3-CV - Filed May 31, 2013**

---

Homeowners claim that cracks in the exterior bricks of their home were caused by blasting in the neighborhood. Their insurance company denied coverage under the homeowner policy. The jury returned a verdict in favor of the homeowners. Based upon our construction of the insurance contract and its exclusion for damage caused by earth movement, we conclude that the judgment approving the verdict is erroneous and must be reversed.

**Tenn. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Gordon C. Aulgur, Nashville, Tennessee, for the appellant, Erie Insurance Exchange.

Jean Dyer Harrison, Nashville, Tennessee, for the appellee, Gregory E. Hearn and Kimberlee Hearn.

## OPINION

Gregory and Kimberlee Hearn purchased a home in Lebanon, Tennessee in May 2005. The Hearns purchased an insurance policy from Erie Insurance Exchange ("Erie") with a coverage period of May 15, 2005 to July 15, 2006.

In June 2006, Mr. Hearn noticed cracks in the brick veneer of the garage and contacted their insurance agent to make a claim under the insurance policy. He believed that the cracks had been caused by blasting at a nearby commercial construction site and/or by blasting by the local water company near the home. Erie retained Project Time & Cost ("PTC"), a consulting service, to inspect the home. PTC submitted a report in December 2006 finding no evidence that the cracks had been caused by blasting. According to PTC,

the cracks in the garage were caused by a truck backing into the garage. PTC further concluded that "the garage two story brick veneer had inadequate foundation, allowing differential settlement."

Mr. Hearn objected to the PTC report, and Erie had PTC conduct a followup investigation. In a second report submitted in April 2007, PTC restated its conclusion that "the damages to the brick veneer on the Hearn residence is [sic] the result of a number of issues not related to nearby blasting activities." In a supplemental report in early May 2007, PTC concluded that additional cracks reported by Mr. Hearn in the exterior walls of the residence (not just the garage) were "shrinkage cracks which developed during the manufacturing process." PTC prepared a letter summarizing its inspections and conclusions on May 20, 2007. The letter sets out PTC's conclusions as follows:

- The cracks in the brick veneer on the garage portion of the Hearn residence were from two different sources: 1) the garage wall was cracked because of impact damages, and 2) differential settlement due to the larger dead loads on the foundation members.
- The damages to the brick veneer on the Hearn residence are not because of the nearby blasting activities.
- The cracks in the bricks on the Hearn residence are the result of the manufacturing process. The cracks occurred prior to installation and as such, are unrelated to blasting.
- The residence has had problems in the past with the brick veneer as evidenced by the fact that portions of the residence have been tuck-pointed and Mr. Hearn stated he has done no repairs to the brick veneer since he purchased the home.

Erie sent a denial of coverage letter to the Hearns in May 2007 stating that "the damages reported to us at your home are not caused by blasting and are excluded in the above captioned homeowner's policy." As to the damage that may have been caused by an automobile colliding with the garage, Erie noted that the Hearns were unaware that the garage had been struck and that the damage had to occur during the coverage period. In September 2007, Erie sent a denial of coverage letter to the Hearns stating that the damage caused by a collision were not covered because there was no evidence that this damage occurred during the policy effective dates.

In January 2008, the Hearns filed a pro se civil warrant against Erie in general sessions court for monetary damages. Following an adverse decision in that court, Erie appealed to circuit court for a trial de novo. After retaining counsel, the Hearns filed an amended complaint in March 2009 alleging breach of insurance contract and violation of

Tenn. Code Ann. § 56-7-105 for bad faith refusal to pay. The trial court denied a motion for partial summary judgment filed by the Hearns and a motion for summary judgment filed by Erie.

The matter was heard before a jury on February 14 and 15, 2012. At the close of the proof, Erie moved for a directed verdict on the bad faith claim under Tenn. Code Ann. § 56-7-105; the trial court denied the motion. The jury returned a verdict in favor of the Hearns, finding that the damage occurred during the policy period, that the Hearns sustained a direct physical loss to the property, and that the damage was not excluded under the policy. The jury also found that Erie's refusal to pay the claim was in bad faith. Based upon the jury verdict, the trial court entered judgment for the Hearns for $64,288 in actual damages (minus a $5,000 deductible) and for $16,072 as a bad faith penalty under Tenn. Code Ann. § 56-7-105.

On appeal, Erie argues (1) that the trial court erred in denying its motion for directed verdict on the bad faith penalty claim, (2) that the material evidence does not support the jury's verdict that the damage claimed was not excluded under the policy, and (3) that the material evidence does not support the jury's award of the cost of re-bricking the property. The Hearns argue that Erie's appeal is barred by Tenn. R. App. P. 3(e); they also seek an award of their attorney fees on appeal pursuant to Tenn. Code Ann. § 27-1-122.

ANALYSIS

(1)

We begin with the Hearns' argument that Erie's appeal is barred under Tenn. R. App. P. 3(e). As will be discussed in part (2) below, disposition of this appeal requires this court to address only one of the issues raised by Erie—namely, whether the damage alleged by the Hearns was included in one of the policy exclusions. We will, therefore, discuss the application of Tenn. R. App. P. 3(e) as to that issue alone.

Rule 3 of the Tennessee Rules of Appellate Procedure addresses the availability of an appeal as of right. Subsection (e) of Rule 3, which concerns the initiation of an appeal as of right, includes the following pertinent language:

> Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was

specifically stated in a motion for a new trial; otherwise such issues will be treated as waived. Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal but is ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal.

Tenn. R. App. P. 3(e). The Hearns argue that, because Erie did not file a motion for new trial, this appeal is barred under Tenn. R. App. P. 3(e).

We disagree with the Hearns' interpretation of Tenn. R. App. P. 3(e). The error under consideration in this appeal presents an issue of law: whether, even accepting the Hearns' position that the damage claimed was caused by blasting, the damage was excluded from coverage under the policy provisions. Under Tenn. R. App. P. 13(a), "Except as otherwise provided in Rule 3(e), any question of law may be brought up for review and relief by any party." The question of law presented does not fall under any of the categories enumerated in Tenn. R. App. P. 3(e)—the admission or exclusion of evidence, jury instructions, misconduct, action during the trial, or any other ground for new trial.

A similar scenario was addressed in *Wright v. Quillen*, 83 S.W.3d 768 (Tenn. Ct. App. 2002). Presented with the argument that Rule 3 of the Tennessee Rules of Appellate Procedure barred Ms. Wright's appeal (because of her failure to file a motion for new trial), the court stated:

> We hold that it does not. Ms. Wright is not presenting for our review any issue predicated upon trial errors. . . . [H]er appeal concerns only the application of the law to those findings. After reviewing the record, we believe that a new trial would have served no purpose but to extend already complex and time consuming litigation. Thus to the extent that a motion for a new trial would have been required by the rule, we suspend the requirement pursuant to the provisions of Rule 3 itself, and Rule 2 governing the suspension of the rules.

*Wright*, 83 S.W.3d at 772. In the present case, we likewise conclude that the motion for a new trial requirement of Tenn. R. App. P. 3(e) does not apply here and that, even if it did apply, that requirement should be waived, as permitted under Tenn. R. App. P. 2[1] and 3.

(2)

---

[1]Rule 2 of the Tennessee Rules of Appellate Procedure provides that, for good cause (and with certain exceptions not applicable here), an appellate court "may suspend the requirements or provisions of any of these rules in a particular case . . . ."

We next consider whether the damage claimed by the Hearns was excluded under the policy. Erie argues that there is no material evidence to support the jury's verdict that the damage claimed was not excluded under the policy provisions.

When reviewing a jury verdict, we must determine whether there is any material evidence to support the verdict. *Goodale v. Langenberg*, 243 S.W.3d 575, 583 (Tenn. Ct. App. 2007); *see* Tenn. R. App. P. 13(d). We take the strongest possible view of the evidence for the prevailing party, discard evidence to the contrary, and allow all reasonable inferences to uphold the verdict. *Goodale*, 243 S.W.3d at 583.

The theory put forth by the Hearns was that the damage for which they sought recovery resulted from blasting near their home.[2] At trial, the Hearns presented expert testimony from Jerry Vines, a structural engineer, who opined that "blasting is really the only likely cause of the cracking." During his cross-examination, Mr. Vines provided more testimony about blasting:

> Q. And that blasting occurs, and it starts vibration of the Earth, right?
> A. Yes, sir. Not necessarily vertically. As shallow as this was, it would have been a horizonal [sic] - -
> Q. But the Earth - -
> A. - - vibration.
> Q. - - started shaking and moving, correct?
> A. Yes, sir.
> Q. And the shaking and moving from the blast point travels all the way to the Hearns' home, correct?
> A. Yes, sir. It travels through the bedrock - - obviously, they're blasting bedrock on the site. The Hearns' home is most likely bearing on bedrock on this site. And therefore, that connected amount of block - - excuse me, bedrock between the two locations, the - - shock wave would travel through that bedrock.
> Q. And that shock wave caused the shaking of the Earth, which then gets to the Hearns' foundation, which caused that foundation to shake, correct?
> A. Yes sir, that would be - - that would be the case.
> Q. And that shaking of the foundation caused by the Earth movement causes the cracks in the brick, correct?
> A. Yes, sir, that would be - - that would be the case.

---

[2]The cracks likely resulting from impact by a vehicle to the front of the garage are not at issue here.

Mr. Vines testified further about the nature of blasting and its results:

Q. This may seem like a silly question. But the blasting, that's manmade, correct?
A. Yes, sir. There's a charge put in the ground, and it - - it explodes and creates some vibration out through the ground, yes, sir.
Q. And that's manmade Earth movement, correct?
A. I would assume so, yes, sir.
Q. And it's that manmade Earth movement which caused the damage to the brick veneer to the Hearns' home excluding that area of impact?
Q. Yes, sir. I mean, this is obviously not Mother Nature doing this. This is activity on an adjacent site.
Q. And this one last thing just to make sure I'm clear, the damage caused by that Earth movement to the brick veneer, that Earth movement didn't cause a fire, did it?
A. No, sir. Why would it cause a fire?
Q. Did it cause any sort of explosion or anything, the damage - -
A. Not that I'm aware of, no, sir.
Q. The Earth movement simply caused the brick to shake, and then caused the cracking in the brick, correct?
A. Yes, sir. It would have disbursed vibrations through the bedrock, around that area, yes, sir.

On redirect examination, Mr. Vines gave the following testimony:

Q. . . . And so the question is, in terms of Earth movement, the Earth doesn't move in a blast, really, does it?
A. No, sir—no, ma'am. It doesn't actually move from one location to another. It's simply a—described as a sinusoidal wave. It pushes out and then comes right back, and it creates, you know, just a shock wave. There's actually no movement of Earth or movement of bedrock except for in the blasting zone where it might fly and crack and separate something.
Q. Did you see any evidence of any heaving of the ground—
A. No.
Q. —back at the Hearn home?
A. No, ma'am.
Q. Did you see any evidence of any side-to-side movement like you would see in an Earth shaking event?
A. No, ma'am. There was no evidence of any kind of mud slide, sinkhole, land mass movement.

Q. No subsidence, no—

A. No subsidence, no heaving. The site would have looked today similar to what it would have looked like prior to the blasting, you know. The seismic activity is simply a shock wave that goes through the ground just creating vibrations.

Based upon the evidence presented, the Hearns argue that the "jury could reasonably conclude that the loss suffered by the Hearns was directly caused by explosion or sonic boom related to the blasting which is a manmade earth movement and a covered peril."

Thus, the question is whether the type of damage described by the Hearns' expert is covered by their homeowners insurance policy. The extent of insurance coverage "is a question of law involving the interpretation of contractual language, which we review de novo with no presumption of correctness." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012). In interpreting insurance contracts, we apply the same rules of construction that govern the interpretation of other contracts. *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). We are to give the language used in an insurance contract its usual and ordinary meaning and construe the policy "'as a whole in a reasonable and logical manner.'" *Id.* at 306 (quoting *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App.1998)). Any ambiguity is to be construed against the insurance company that drafted the contract. *See Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006); *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 365 (Tenn. 1973).

The language at issue here is a policy exclusion that provides as follows:

We do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss:
. . .
8. by earth movement due to natural or manmade events, meaning earthquake including land shock waves, or tremors before, during, or after a *volcanic eruption*, mine subsidence, landslide, mudslide, mud flow[,] earth sinking, rising, or shifting. Direct loss by *Fire, Explosion, Sonic Boom, Theft or Breakage of Glass* resulting from earth movement, mine subsidence, landslide, mudslide, mud flow, earth sinking, rising or shifting is covered.

We find no ambiguity in the language of this exclusion. Unlike the earth movement provisions at issue in many cases, this exclusion expressly includes earth movement caused by "natural or manmade events." *See generally Fayad v. Clarendon Nat'l Ins. Co.*, 899

-7-

So.2d 1082, 1088 (Fla. 2005) (exclusion interpreted as limited to earth movement caused by natural phenomena); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998) (appendix of cases construing earth movement exclusions). Moreover, the inclusion of land shock waves and tremors belies the theory (suggested in some of the plaintiffs' questions at trial) that earth movement requires an actual permanent displacement of earth. *See Rankin v. Generali-U.S. Branch*, 986 S.W.2d 237, 239 (Tenn. Ct. App. 1998) (applying principle of *esjudem generis*—requiring construction of term "as applying to persons or things of the same kind or class as those specifically mentioned"—to earth movement exclusion).

Mr. Vines testified very directly that the cause of the damage to the Hearns' home was blasting. Blasting is a manmade event. It "is obviously not Mother Nature doing this." So, the question becomes whether the blasting created earth movement under the policy. On cross-examination, Mr. Vines indicated that there was earth movement. On redirect, in an attempt to address that testimony, he stated that the earth did not move. Rather the blast creates "a shock wave that goes through the ground just creating vibrations." A vibration is "[a] rapid linear motion of a particle or of an elastic solid about an equilibrium position." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011). Consequently, a vibration coursing through the ground involves movement of the soil and rock particles. The fact that the earth particles may have returned to their original position does not mean they did not move. We find that these vibrations are manmade earth movements within the meaning of the policy.

On appeal, the Hearns argue that the jury could reasonably have concluded that the damage "was directly caused by explosion or sonic boom related to the blasting." The policy exclusion also states that direct loss by explosion or sonic boom "resulting from earth movement" is covered. There was no evidence of an explosion or sonic boom precipitated by earth movement that directly caused the cracks in the Hearns' garage.

When viewed most favorably to the plaintiffs, the evidence shows that the cracks in their home were caused by shock waves or vibrations triggered by nearby blasting. This type of manmade earth movement falls within the policy exclusion. *See State Farm Fire & Cas. Co. v. Castillo*, 829 So.2d 242, 245 (Fla. Dist. Ct. App. 2002). Therefore, we must conclude, as a matter of law, that the damage claimed is excluded under the policy.

In light of this conclusion, we decline to consider the remaining issues raised by the parties.

CONCLUSION

The judgment of the trial court is reversed. Costs of appeal are assessed against the

appellees, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE