Sam A. Gassaway and wife, Dorothy H. Gassaway,
Appellees-Complainants,

*v.*

Travelers Insurance Company and Travelers Indemnity
Company, Appellants-Defendants.

439 S.W.2d 605.

(*Jackson*, April Term, 1968.)

Opinion filed March 31, 1969.

650

ARMSTRONG, ALLEN, BRADEN, GOODMAN, MCBRIDE & PREWITT, Memphis, for appellees-complainants, NEWTON P. ALLEN, Memphis, of counsel.

CHANDLER, MANIER, JOHNSON & HARRIS, Memphis, for appellants-defendants, CARROLL C. JOHNSON, Memphis, of counsel.

MR. JUSTICE DYER delivered the opinion of the Court.

This suit involves the construction of a comprehensive general liability insurance policy under stipulated facts. In this opinion appellees, Sam A. Gassaway and wife, Dorothy H. Gassaway, will be referred to as complainants, and appellants, Travelers Insurance Company and Travelers Indemnity Company as defendants.

On May 17, 1954, V & M Homes, Inc., in the development of a residential subdivision in the City of Memphis, entered into a contract with the City which required the installation of certain drainage facilities by V & M Homes. In accordance with this contract V & M Homes laid an under-ground storm sewer which ran diagonally across Lot number 49 of said subdivision, and also installed on this lot an open-throat inlet to this storm sewer. It is agreed that these drainage facilities would not be visible to anyone examining this lot. On August 16, 1955, V & M Homes conveyed Lot number 49 by warranty deed to Mary L. Johnson. This deed does not mention the drainage facilities nor did V & M Homes disclose its existence to Mary L. Johnson. Mary L. Johnson constructed a house on this lot and on April 21, 1956, conveyed the house and lot to complainants. This deed of April 21, 1956, does not mention these drainage facilities and it is further stipulated neither the grantor nor the grantees at the time the deed was executed had any knowledge of these drainage facilities.

Complainants moved into this house and their first knowledge of these drainage facilities came in 1963 when the foundation began to settle to such an extent that serious damage to the house resulted. Upon investigation

complainants found water had been discharged from these drainage facilities underneath the house causing the foundation to settle. Based upon these facts, complainants filed suit in the Circuit Court of Shelby County on June 30, 1964. A judgment obtained against V & M Homes was subsequently returned nulla bona. There were other parties named defendants in the Circuit Court suit but any action against them is not at issue in the case at bar.

Complainants filed the suit now before the Court in Chancery seeking to collect from defendants a money judgment previously obtained in the Circuit Court against Travelers' insured, V & M Homes. The chancellor found in favor of complainants. Defendants appealed.

During the period from May 17, 1954 to May 17, 1956, V & M Homes was insured by Travelers under comprehensive general liability policies containing the following language:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

The chancellor found defendants' liability must depend upon the issues as determined in the Circuit Court. This is correct. Therefore, defendants' obligation to pay the Circuit Court judgment is to be measured by the insurance policy and the issues as determined in the Circuit Court. The first question presented for decision is whether the issues as determined in the Circuit Court support complainants' claim that the loss was by "accident" as this word is used in the insurance policy. See

*Ritchie v. Anchor Casualty Co.*, 135 Cal.App.2d 245, 286 P.2d 1000 (1955).

The chancellor found the action in the Circuit Court was bottomed upon the failure of V & M Homes in the sale of the lot to disclose the existence of the drainage facilities and risk created thereby, and that such was an action in tort as opposed to an action in warranty. In this appeal, therefore, the complainants are arguing that the Circuit Court determined that V & M Homes had negligently failed to disclose the existence of the drainage facilities and that the risk created by this negligence was an accident within the meaning of the insurance policy.

■ Prior to taking up this question we think we should consider negligence as it relates to accident. We agree the negligent acts of an insured can be an accident as this word is used in insurance policies. In *Royal Indemnity Co. v. Kuhr,* 113 Ga. App. 39, 147 S.E.2d 23 (1966), the court on this point said:

The term "accident" in liability insurance contracts generally does not include any injury deliberately and wilfully done, but generally covers injuries caused by negligence of the insured (citations omitted).

On this point the court in *Massachusetts Bonding & Insurance Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396 (Tex.1967), said:

We construe the term "accident" as used in the policy to include negligent acts of the insured causing damage which is undesigned and unexpected.

Further on this point see 7A Appleman, Insurance, Law and Practice, Section 4492; *Bundy Tubing Co. v. Royal Indemnity Co.*, 298 F.2d 151 (6th Cir. 1962).

▮▮▮ The point here is that while negligent acts can and in fact often do support a claim of accident as this word is used in insurance policies, yet it does not follow that all negligent acts so support such claim. Accident and negligence are not synonymous terms. *Albuquerque Gravel Products Co. v. American Employers Insurance Co.*, 282 F.2d 218 (10th Cir. 1960). The nature of the action, that is whether it be tort, contract or otherwise, may be a factor in determining if there has been an accident under a given factual situation, but the nature of the action does not per se control it. Whether the damages suffered resulted from an accident so as to make the insurer liable requires the examination of the entire factual situation.

Under the record in the Circuit Court it is apparent that the judgment therein obtained by complainants was upon the holding in *Belote v. Memphis Development Co.*, 208 Tenn. 434, 346 S.W.2d 441 (1961). In *Belote*, Chief Justice Burnett noted that in this jurisdiction prior to the *Belote* holding as between vendor and vendee in the sale of real estate the doctrine of caveat emptor applied. *Belote* made an exception to this doctrine. In order for the complainants to recover in the Circuit Court on the theory of the failure to disclose in the sale of the lot they would have had to come within the exception made by *Belote*. The exception made by *Belote* is as follows:

A Vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to the person upon the

land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his subvendee, after the vendee has taken possession, if

(a) the vendee does not know of the condition or risk involved therein, and

(b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk. 208 Tenn. at 438, 346 S.W.2d at 442.

In the charge to the jury in the Circuit Court case the court said:

So if you find that the existence of the storm sewer and inlet on Lot 49 involved an unreasonable risk or harm to either Mrs. Johnson or to Mr. and Mrs. Gassaway, and if you find the representatives of V & M Homes, Inc. knew of the existence of either the sewer or inlet on Lot 49 and the risk created thereby to Mrs. Johnson or any subsequent purchaser, and that the representative of V & M Homes, Inc. had reason to believe that Mrs. Johnson neither knew nor would discover such condition, V & M Homes was not entitled to assume that she would discover it, but instead, V & M Homes had the duty to disclose such condition to Mrs. Johnson, and if you find V & M Homes, Inc. did not disclose such condition to Mrs. Johnson and if such failure proximately caused damage to the subsequent purchasers, then you would find for the plaintiffs.

Under the charge in the Circuit Court and the verdict returned thereon, the issues determined there so far as are here necessary to note are as follows: That V & M

Homes sold this lot not only with knowledge of existence of these drainage facilities, but also with the knowledge such created a risk to the purchasers or subsequent purchasers and further V & M Homes had reason to believe that purchasers or subsequent purchasers would not discover such condition. The question for decision then resolves itself to whether this supports a claim the damage resulted therefrom was by reason of an accident as this word is used in the insurance policy.

In regard to the legal definition of the word "accident" as used in insurance policies we have conducted a rather extensive research. The courts have not found it possible to give the word so used a precise legal definition. In most all jurisdictions it is held this word so used has no technical meaning in law and should be interpreted in its ordinary and popular sense. It does appear to us that the courts now either give this word a broader meaning or at least apply it to factual situations which the courts not many years ago would not have accepted. In *American Employers Insurance Co. v. Knox-Tenn Equipment Co.*, 52 Tenn.App. 643, 377 S.W.2d 573 (1963), Judge Carney, writing the opinion for the Western Section of the Court of Appeals, after citing a number of Tennessee cases, defined accident as used in liability insurance policies as an event not reasonably to be foreseen, unexpected and fortuitous. In *E. K. Hardison Seed Co. v. Continental Casualty Co.*, 56 Tenn. App. 644, 410 S.W.2d 729 (1966), Judge Humphreys, now Mr. Justice Humphreys, writing the opinion for the Middle Section of the Court of Appeals, approved this definition. We think this definition is as apt and correct as can be given.

■ ■ We do not think the factual situation as determined in the Circuit Court could be termed as damages

caused by accident. The Circuit Court determined that V & M Homes sold this lot with the knowledge these drainage facilities were located thereon. An act done with knowledge of the facts is not an act done in the manner to be described as unforeseen and unexpected or fortuitous. It is argued here, and we think correctly, that the damage occurring was not intended by any of the parties, and was, in fact, the result of ordinary negligence on the part of V & M Homes. Accepting this argument does not compel the conclusion the damage was caused by accident. The element of foreseeability cannot be ignored. The Circuit Court determined V & M Homes knew these drainage facilities created a risk and under these facts we think V & M Homes could reasonably foresee that what did occur could occur. When a reasonably foreseeable event does occur, it cannot be said to be a result that was unforeseen and unexpected or fortuitous.

The complainants in support of their claim that damages arose as a result of an accident cite the following cases: *American Employers Insurance Co. v. Knox-Tenn Equipment Co.*, supra; *Ritchie v. Anchor Casualty Co.*, supra; *American Indemnity Co. v. Sears, Roebuck & Co.*, 195 F.2d 353 (6th Cir. 1952); *Bundy Tubing Co. v. Royal Indemnity Co.*, supra; *Andrews & George Co. v. Canadian Indemnity Co.*, (Brit.Col.) 4 D.L.R. 690; 45 A.L.R.2d 997 (1952).

In the case of *American Employers Insurance Co. v. Knox-Tenn*, supra, Knox-Tenn was insured under a policy containing the same language as in the case at bar. Knox-Tenn in the normal course of its business sold a particular drill bit known in the trade as a fourth of an inch bit, but which had an actual measurement of .262 inches. Knox-Tenn furnished some of these bits to a

contractor in order that he might determine if they were suitable for a particular construction job. The contractor found the bits satisfactory and ordered an additional supply from Knox-Tenn in order to complete the job. Upon receipt of this order for additional bits Knox-Tenn, not having them in stock, placed an order for them with the same manufacturer who had made the bits already tested by the contractor. Upon receipt of these additional bits Knox-Tenn forwarded them to the contractor, whose use of them caused the damage upon which the claim against American Employers was based. The damages resulted from the manufacturer changing the tolerance of the bits from .262 inches (size of the first bit furnished contractor) to .295 inches (size of the additional bits furnished the contractor). The change in tolerance of these bits was done without the knowledge or fault on the part of Knox-Tenn. The Court held under these circumstances shipment of these larger bits (.295 inches) causing the damage by Knox-Tenn to the contractor, was an event occurring fortuitously; that is, by chance, and therefore accidental. The distinction between the Knox-Tenn case and the case at bar involves knowledge. In Knox-Tenn the shipment of the larger bits was done without knowledge so they would be defective for the purposes intended. In the case at bar V & M Homes sold the lot with knowledge of the condition and risk.

The case of *Ritchie v. Anchor Casualty Co.,* supra, was also cited by the court in *American Employers Insurance Company v. Knox-Tenn,* supra. Ritchie, the insured, sold oil to be used in the manufacture of corn chips. The oil was rancid causing damage to the purchaser and the manufacturer of the corn chips. The purchaser sued Ritchie by way of cross-action on two counts alleging

express warranty and three counts alleging implied warranty. Ritchie compromised and settled the suit and then sued its insurance carrier, Anchor Casualty Co., claiming the loss was an accident under the policy which contained similar language as the one in the case at bar. The court found the sale of oil was a voluntary act but it produced an unexpected and unforeseeable result which was an accident within the meaning of the policy. The point distinguishing this case from the case at bar is that there was no claim Ritchie had knowledge the oil was rancid. In the case at bar it could not be claimed that V & M Homes had no knowledge of the sewer easement. If such a claim had been made complainants could not have recovered under *Belote.*

In the case of *Bundy Tubing Co. v. Royal Indemnity Co.,* supra, Bundy was in the business of manufacturing steel tubing to be used in a concrete floor as a part of a hot water heating system. Bundy sold a certain lot of this tubing which after installation proved to be defective causing damage. The purchaser of the defective tubing sued Bundy alleging both negligence and a breach of warranty, which suit was compromised by Bundy paying damages. Bundy then sued its insurance carrier claiming the loss was caused by accident. The Court held the failure of the tubing in the heating system was unforeseen, unexpected and unintended resulting in the damage being caused by accident. The distinction here and in the case at bar is that Bundy had no knowledge of the defect in the tubing.

We have examined the other two cases listed above cited by complainants and find they are not persuasive on the facts.

The judgment of the chancellor is reversed and the cause dismissed.

BURNETT, CHIEF JUSTICE, and CHATTIN, CRESON and HUMPHREYS, JUSTICES, concur.