Avery WILLIAMS, etc., et al., Plaintiffs,

v.

**Lois ESTEP, Defendant.**

**No. CIV-2-75-82.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Dec. 22, 1976.

Tom H. Rogan, Rogersville, Tenn., for plaintiffs.

M. Lacy West, Kingsport, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a removed diversity action for damages for personal injuries. 28 U.S.C. §§ 1332(a)(1), 1441(a). The plaintiff Mr. Avery Williams is 17 years of age; thus, under the disability of infancy until his 18th birthday. T.C.A. §§ 1–305, 6–648.

The parties agreed upon a settlement of all issues between them herein by a compromise under which the defendant would pay the minor plaintiff the sum of ten thousand dollars ($10,000).[1] It is stipulated that such payment would be made by the defendant's insuror. It is defending this action under reserved rights it claims in the contract of insurance between such parties. The contract limits the liability of the insuror thereunder to $25,000. It is represented to the Court by officers thereof, but in the absence of any evidence of such fact, that the defendant has no personal estate subject to execution herein beyond the insurance coverage mentioned.

Before the proposed settlement by compromise may be approved, this Court must deem it to be in the best interest of the minor plaintiff. T.C.A. § 34–1102, cited and quoted from in *Rafferty v. Rainey*, D.C.Tenn. (1968), 292 F.Supp. 152, 154. There must be a thorough judicial investigation of the facts upon which any right and the extent of any recovery by the minor plaintiff may be based. *Idem.*, citing and quoting from *Kates v. Anderson, Dulin, Varnell Co.*, C.A.Tenn. (1929), 9 Tenn.App. 396, 404[4], certiorari denied (1929). " * * Thus, it is clear that an onerous burden devolves upon this Court in considering proposed settlements involving minors. * * * " *Ibid.*, 292 F.Supp. at 154–155[1].

The minor plaintiff was wounded by multiple lead pellets from a shotgun shell disbursed widely throughout the soft tissue in the middle portions of both of his legs. He has sustained therefrom some impairment of his legs which may be expected reasonably to continue. This includes muscle spasms produced by irritation of such tissues by the presence of lead therein, by irritation of the peroneal nerve and the inneroscious membrane in the side of his right leg, or both. These tissues and this nerve tolerate poorly the presence of lead. When the minor plaintiff utilizes his legs in the performance of heavy manual labor or

---

1. An additional $2,000 would be paid to the adult plaintiff by the defendant thereunder.

stands on his feet for long hours consecutively, swelling develops in his legs and irritation of such tissue and nerve results, especially in his right leg. In addition, he has acquired some sensory deficit in his third, fourth and fifth right toes as well as cramping on the side of that leg.

Beyond that, the minor's initial impairments have improved. The earlier atrophy in his legs has been arrested; all major muscles in his lower extremities have recovered, so that he has good motion in both legs; and he has regained most of his lower muscular strength. Confined by the limitation of his skills, he is able to perform sedentary jobs; and, he is able to continue farm work on a limited basis, although the resulting effects upon him of all his activity in the labor market must be determined by trial.

The greater perplexity concerning the results which may be anticipated from the minor plaintiff's injuries relate to the probability of future impairment of a more permanent disabling nature. As Mr. Williams uses his legs, the tissues and nerve will be irritated thereby. Swelling will result. The poor tolerance of lead by tissues around the pellets render them prone to infection. These areas could become at any time inflamed, infected and drain.

Mr. Williams has a long expectancy of life. Even if this potential condition remains dormant now and while he remains a younger person, there is a reasonable probability to an appropriate degree of medical certainty that such difficulty may be anticipated at some future time. And even prior to such probable onset, his physician believes to a reasonable degree of medical certainty that Mr. Williams' existing impairment will grow progressively worse with the passage of time.

It appears further that there is little which medical science can do to alleviate permanently this situation. If localized problems develop around a pellet, corrective action may be taken successfully in that area; but, to excise all the pellets in a general manner at this time would require surgical procedures which are deemed pointedly unadvised and also deemed by an expert virtually impossible.

The actual and potential effects of his condition on the younger Mr. Williams' future earning capacity are patent. He has acquired no skills qualifying him for sedentary-type tasks; whether he has the capacity and opportunities to acquire such skills are not demonstrated to the Court.

The prospect that the defendant Ms. Estep would be found liable to the plaintiffs herein is reasonably good. She " * * * went after * * * " the minor plaintiff in her automobile with a .410-gauge shotgun; overtook and forced him to dismount from a tractor on which he was riding; asked him to repeat while confronting her (while she was thus armed) what she claims he had spoken in her direction earlier some ½-mile removed from the scene; when he remained silent, she forced him to " * * * get down on his knees, * * * " called him " * * * a no-good s. o. b., * * * " and forced him to crawl for some distance on his knees; and in the process fired (and twice reloaded) the weapon, during which events the minor plaintiff was struck by pellets from her gun. The minor plaintiff testified that Ms. Estep had claimed that he had sounded a "wolf-whistle" in her direction, had asked her twice if she wanted to have her neck broken, and that she did not intend to " * * * hit * * * " him when she shot her gun. Apparently, she contends, therefore, that her shooting of the minor plaintiff was an accident.

The plaintiffs claim that the defendant Ms. Estep was negligent in firing her gun and injuring this young man. She has testified that she has repeated experience of more than 20 years in firing long guns. It would be surprising if six reasonable minds failed to find from the foregoing facts that Ms. Estep was proximately negligent in firing her gun in such manner that its pellets struck the minor plaintiff. Her claim of contributory negligence by way of provocative conduct is weakened substantially by her sworn admission that, after she had compelled him to assume a submissive position upon his knees before her, he apologiz-

ed for such conduct, by stating " * * * if you won't shoot, I'll never bother you again. * * * " Thus it appears to the Court that it is reasonably certain that the plaintiffs would establish on trial the liability of the defendant, and that damages to the minor plaintiff in a greater amount than $10,000 have proximately resulted from such liability and should be awarded.

Another consideration, however, is whether the plaintiffs have a reasonable expectation of collecting any judgment in excess of that offered in the compromise settlement being considered. Ms. Estep has testified that she is certified by the states of both Tennessee and Florida to teach elementary and secondary education in their schools; that she was graduated from a university in accounting and has accomplished work toward a master's degree; that she owns " * * * three sections * * * " of cattle with electric fencing and gates; that she owns real estate with about 450 feet fronting on a paved roadway in Hawkins County, Tennessee; but that she does her " * * * farming with a wheelbarrow; I have no tractors * * * "; and that, as of mid-1974, she is working as a teacher in Florida.

The Court is unable to ascertain from this limited information it has been able to glean from the record herein the vulnerability of Ms. Estep to execution of any judgment which may be obtained against her. The more predictable ability of the plaintiffs to collect any judgment is predicated upon the homeowners' policy of liability insurance which the defendant holds. Although this contract has not been exhibited, adverse counsel represented jointly to the Court in the oral hearing of December 2, 1976 herein that it contains a clause excluding from its coverage the intentional acts of Ms. Estep. If her acts in shooting the minor plaintiff are deemed to have been "intentional," the financial vulnerability of the defendant is placed in even greater doubt.

The reported decisions of intermediate Tennessee appellate courts are not helpful in that matter because of the variance between their peculiar facts and those related hereinabove. See *Freeze v. The Continental Casualty Co.*, C.A.Tenn. (1927), 5 Tenn. App. 261 (no pet. for cert.); *So. Surety Co. of N.Y. v. Madison*, C.A.Tenn. (1931), 13 Tenn.App. 657, certiorari denied (1932). One decision of the Tennessee Supreme Court is mildly instructive. Where a policy of insurance indemnified the insured for liability for damages " * * * caused by accident, * * * " that Court adopted the definition of a Georgia court to the effect that such an "accident" for policy purposes " * * * 'does not include any injury deliberately and wilfully done, but generally covers injuries caused by negligence of the insured,' * * * " and the statement of a Texas court that such term is construed " * * * 'to include negligent acts of the insured causing damage which is undesigned and unexpected.' * * * " *Gassaway v. Travelers Ins. Co.* (1969), 222 Tenn. 649, 653, 439 S.W.2d 605, 607. This might indicate that Tennessee courts would hold that they would construe the contract *sub judice* as excluding coverage where the acts done by the insurer were deliberately and wilfully done and caused damage which was designed and expected but as including coverage for damage caused by negligence of the insured which produced results which were both undesigned and unexpected. The *Gassaway* court was careful to observe:

> \*   \*   \*   \*   \*   \*
>
> * * * The point here is that while negligent acts can and in fact often do support a claim of accident as this word is used in insurance policies, yet it does not follow that all negligent acts so support such a claim. Accident and negligence are not synonymous terms. * * * Whether the damages suffered resulted from an accident so as to make the insurer liable requires the examination of the entire factual situation.
>
> \*   \*   \*   \*   \*   \*

*Ibid.*, 222 Tenn. at 654[2], [3], [5], 439 S.W.2d at 607.

A Tennessee trial court marked such a factual distinction in construing a contract of liability insurance which excluded from

its coverage " * * * bodily injury . . which is either expected or intended from the standpoint of the insured." The insured deemed himself harassed by trespassing neighborhood children. He asked certain of them to leave his premises. They shrugged their shoulders in response. Thereupon, he obtained his automatic shotgun and loaded it with three shells; returned to his door, saw about nine-to-twelve children dispersed in two groups, one group in his yard and another in his next-door neighbor's, shot from his hip into the ground three times " * * * to scare them * * * " with no intention of hitting anyone; but, he was then told that one of the children had been struck by gun-shot. The trial judge ruled that the firing of the shotgun by the insured in a manner which resulted in such child's being injured, " * * not in self-defense and voluntarily on his part, deprives him of the right to say that it was an accident because he did not intend to hit anyone. * * * " *Melton et al. v. Republic Vanguard Insurance Company*, C.A.Tenn. 1976, 548 S.W.2d 313.[2]

Herein, Ms. Estep denies that she " * * * carelessly, recklessly, and negligently * * * " fired her gun, and that she had been provoked by the minor plaintiff in such manner that he knew would be likely to provoke her and, in effect, also that she acted in self-defense. Her recorded testimony supports the conclusions that she acted deliberately in pursuing, confronting and compelling demeaning actions on the part of this young man. Her claim of self-defense appears to have been rejected by a jury in the Criminal Court of Hawkins County, Tennessee, although the burden of proof therein was much heavier upon her adversary than herein.

As stated above, the fact that Ms. Estep was an experienced owner and user of long guns; the fact that she has testified that she lacked the intention " * * * to shoot * * * " the minor plaintiff but " * * * was just trying to scare him so that he would stop * * * "; and the further fact that she did, in fact, shoot in such a manner that pellets from the gun she admittedly fired *did* strike him, which would result in a finding of negligence on the part of Ms. Estep which caused the plaintiffs damage and which was both undesigned and unexpected; therefore, that liability for her acts is not excluded by her contract with her insuror, compels rejection of the parties' application.

Unless and until it is established more satisfactorily that the defendant's personal estate is such that she cannot be compelled to pay a judgment to the minor plaintiff in excess of $10,000, and so long as it appears to the Court that such defendant is indemnified up to an amount of $25,000 for the negligent acts she appears to have committed herein, which produced undesigned and unexpected consequences, the Court cannot approve as in the best interest of the minor plaintiff under all the circumstances a settlement of his claim herein for the sum of $10,000 in damages.

Accordingly, the joint application of the parties for approval as to the minor plaintiff of the settlement they have reached by compromise hereby is REJECTED. This is without prejudice to the submission of a further application of greater advantage to the minor plaintiff.* " * * * Infants should not be denied the advantages that quite often can be derived from the settlement of their causes of action, without litigation. * * * " *Rainey v. Rafferty, supra*, 292 F.Supp. at 154.

---

2. This unreported decision affirmed the action of the Chancery Court of Davidson County, Tennessee in dismissing the lawsuit on the ground of the failure of the insured to give timely notice of his claim but pretermitted consideration of such dismissal on the ground of lack of coverage due to the intentional character of the wrong committed by the insured. Thus, the legal principle expressed is only that of a trial judge.

*NOTE: The Court approved subsequently a settlement for compromise of $20,000.