RENDERED: MARCH 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1249-MR

HERCON CONSTRUCTION, INC.                                                   APPELLANT


                        APPEAL FROM SCOTT CIRCUIT COURT
v.                    HONORABLE KATHRYN H. GABHART, JUDGE
                             ACTION NO. 17-CI-00730


ARROWHEAD SYSTEMS, L.L.C.
(F/K/A ARROWHEAD SYSTEMS,
INC.); D&S CONSTRUCTION OF
SCOTT COUNTY, L.L.C.; DAVID
CANNON; PENNSYLVANIA
NATIONAL MUTUAL INSURANCE
COMPANY; QUALITY SYSTEMS,
INC.; THOMAS YOUNG; AND
ZURICH AMERICAN INSURANCE
CO.                                                                          APPELLEES

AND


                              NO. 2023-CA-1286-MR


ARROWHEAD SYSTEMS, L.L.C.
(F/K/A ARROWHEAD SYSTEMS,
INC.) AND THOMAS YOUNG                                        CROSS-APPELLANTS

CROSS-APPEAL FROM SCOTT CIRCUIT COURT
v.        HONORABLE KATHRYN H. GABHART, JUDGE
ACTION NO. 17-CI-00730


HERCON CONSTRUCTION, INC.;
D&S CONSTRUCTION OF SCOTT
COUNTY, L.L.C.; DAVID CANNON;
PENNSYLVANIA NATIONAL
MUTUAL INSURANCE COMPANY;
QUALITY SYSTEMS, INC.; AND
ZURICH AMERICAN INSURANCE
CO.                                     CROSS-APPELLEES

AND


NO. 2023-CA-1290-MR


HERCON CONSTRUCTION, INC.                APPELLANT


APPEAL FROM SCOTT CIRCUIT COURT
v.        HONORABLE KATHRYN H. GABHART, JUDGE
ACTION NO. 10-CI-01245


ARROWHEAD SYSTEMS, INC.; D&S
CONSTRUCTION OF SCOTT
COUNTY, L.L.C.; DAVID CANNON;
PENNSYLVANIA NATIONAL
MUTUAL INSURANCE COMPANY;
QUALITY SYSTEMS, INC.; THOMAS
YOUNG; AND ZURICH AMERICAN
INSURANCE CO.                                 APPELLEES

AND

ARROWHEAD SYSTEMS, L.L.C.
(F/K/A ARROWHEAD SYSTEMS,
INC.) AND THOMAS YOUNG                                    APPELLANTS


                          APPEAL FROM SCOTT CIRCUIT COURT
v.                   HONORABLE KATHRYN H. GABHART, JUDGE
                             ACTION NO. 10-CI-01245


HERCON CONSTRUCTION, INC.;
D&S CONSTRUCTION OF SCOTT
COUNTY, LLC; DAVID CANNON;
PENNSYLVANIA NATIONAL
MUTUAL INSURANCE COMPANY;
QUALITY SYSTEMS, INC.; AND
ZURICH AMERICAN INSURANCE
CO.                                                        APPELLEES



                                  OPINION
                                 AFFIRMING

                            ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND A. JONES, JUDGES.

ECKERLE, JUDGE:  This case involves consolidated appeals from summary and

declaratory judgments of the Scott Circuit Court holding that two insurers have no

obligation to insure or indemnify insureds from claims of breach of contract,

negligence, defective workmanship, or fraud. For the foregoing reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Facts*

While the procedural history of this case is complicated, the factual underpinnings are straightforward. Thomas Young purchased a large residence in Scott County, Kentucky (the "Residence"). Almost 20 years ago, in 2006, Young and his company, Arrowhead Systems, Inc., now known as Arrowhead Systems, LLC [sic], (collectively referred to as "Young"), purchased PermaCrete from Quality Systems Inc. ("QSI"), a Tennessee corporation that is now out of business. Young alleges that QSI marketed PermaCrete as a stucco-like material, suitable for finishing the Residence's exterior. Young further claims that QSI represented that it would arrange for its preferred "dealer," Hercon Constructions Inc. ("Hercon"), also a Tennessee company, to apply PermaCrete. Young avers that QSI represented that it would supervise Hercon's work. Young now believes that QSI constituted a pyramid scheme.

Young directly contracted with Hercon to apply PermaCrete to the Residence. Hercon's work commenced in October of 2006. Hercon initially installed concrete sheeting, but delayed application of PermaCrete until the Spring of 2007. Hercon's application of PermaCrete consisted of spraying the material on

the structure's brick veneer. Young claims that Hercon failed to protect areas of the structure from the PermaCrete application, including doors, windows, soffits, limestone columns, balustrades, trim, gutters, copper downspouts, weepholes, and interior flooring. Due to the PermaCrete bonding agent, the material allegedly and irreparably damaged those portions of the structure. Young further asserts that Hercon misapplied PermaCrete by both over and under spraying areas of the Residence. As a result, in the Summer of 2007, Young terminated Hercon.

Upon request, QSI then directed Young to a different PermaCrete "dealer," D&S Construction of Scott County, L.L.C. ("D&S"). As with Hercon, Young contracted directly with D&S to complete application of PermaCrete to the Residence. Young alleges that QSI agreed to supervise D&S's work, as it had done with Hercon. And as with Hercon, Young found D&S's application of the PermaCrete to be unsatisfactory and terminated the contract. Young also alleges that QSI grossly underestimated the amount of PermaCrete necessary for proper application, resulting in Young making additional purchases.

B. *Young's Lawsuit against QSI, Hercon, and D&S*

On December 29, 2010, four years after Young first purchased PermaCrete from QSI, Young filed suit in Scott Circuit Court against QSI, Hercon,

and D&S, Case No. 10-CI-00245 (the "Underlying Action").[1]  Young's Complaint

asserted numerous causes of action, based in contract and tort.  Four years after

that, on January 10, 2015, Young filed an Amended Complaint to assert additional

counts.  As for QSI, Young alleged breach of warranty, breach of contract,

fraudulent inducement, fraudulent misrepresentations and omissions, negligent

misrepresentations, violations of Kentucky Consumer Protection Act, and

negligent supervision of Hercon and D&S.  As to Hercon, Young alleged breach of

contract, breach fraudulent misrepresentations and omissions, and gross

negligence.  Regarding D&S, Young alleged breach of contract.  In addition to the

facts detailed above, Young included factual allegations that QSI and Hercon made

misrepresentations regarding the depth of Hercon's training, experience, and

ability to apply PermaCrete properly.

During all relevant times, QSI maintained through Pennsylvania

National Mutual Insurance Company ("Penn National") a commercial general

liability ("CGL") policy of insurance (hereinafter referred to as the "Penn National

Policy").  QSI also purchased a commercial umbrella policy, which for purposes of

---

[1] Four judges have presided over this lengthy dispute.  Judge Paul Isaacs originally presided over the action.  Upon his retirement, Judge Brian Privett presided over the case.  However, Judge Privett subsequently resigned, and Judge Robert McGinnis served as special judge.  Finally, Judge Kathryn Gabhart presided over the matter.

our discussion simply supplemented the coverage limits of the CGL policy. Penn National agreed to provide QSI with a defense under a reservation of rights.

Hercon was insured through a CGL policy of insurance issued by Maryland Casualty Company ("MCC"). In 2011, upon notice of Young's initial Complaint, MCC supplied Hercon with a coverage denial determination, finding that it owed neither a duty to defend nor to indemnify Hercon for the alleged damage. MCC explained that Young's allegations did not fall within the definition of a covered "occurrence" under the subject policy; and, even if coverage was triggered, exclusions precluded coverage. Consequently, Hercon retained defense counsel at its own cost. Zurich American Insurance Company ("Zurich") acquired MCC, thereby assuming any obligations of the subject policy (hereinafter referred to as the "Zurich Policy"). Zurich continued to deny any such obligation and to decline a duty to defend Hercon in the Underlying Action. Yet it is directly involved in the subsequent proceedings discussed below where it also argues against coverage.

C. *Young's Declaratory Action*

During the pendency of the Underlying Action, QSI and D&S declared bankruptcy. Consequently, on November 3, 2016, Young filed a Second Amended Complaint to add Penn National as party defendant, seeking declaratory

relief based on insurance coverage, third-party beneficiary status, and the right to enforce the Penn National Policy.

On October 5, 2017, the Trial Court ordered the declaratory counts to be severed into a separate action, Case No. 17-CI-0730 (the "Dec Action") and held the Underlying Action in abeyance pending a determination of coverages. In April of 2018, Penn National filed a Motion for Summary Judgment.

On August 15, 2018, Young amended the Complaint to add Zurich as party defendant. On October 21, 2020, Hercon filed a crossclaim against Zurich on the issue of coverage under the Zurich Policy.

In June of 2020, Young filed a Motion for Declaratory Judgment, seeking declarations that Penn National was obligated to continue defending QSI and indemnify QSI for damages as alleged in the Underlying Action. Likewise, Young's Motion for Declaratory Judgment also sought declarations that Zurich is obligated to defend and indemnify Hercon in the Underlying Action. Shortly thereafter, Zurich filed a Cross Motion for Declaratory Judgment and Summary Judgment. Hercon also filed a Cross Motion for Declaratory Judgment.

On February 8, 2021, with these dispositive motions and cross motions pending, the Trial Court issued an Order ruling that Tennessee law governs the issue of coverage under the Penn National Policy and the Zurich

Policy. The Trial Court allowed the parties to file supplemental briefs in support of their respective positions under Tennessee law.

Having been fully briefed on the matter, on August 3, 2022, the Trial Court, with Special Judge Robert McGinnis presiding, entered an Order granting Penn National and Zurich summary judgment and declaratory judgment, thereby dismissing both parties with prejudice. Judge McGinnis' succinct Order was one page in length and did not provide any legal reasoning for his ruling.

On August 12, 2022, Hercon filed a Motion to Vacate the Order. On August 15, 2022, Young filed a Motion to Alter, Amend, or Vacate the Order, or in the alternative, Young requested that the Trial Court provide reasoning for its summary judgment and declaratory judgment rulings. On September 1, 2022, arguments were held. On September 29, 2023, the Trial Court, under the fourth consecutive presiding judge in this case, Judge Kathryn Gabhart, entered a detailed Opinion and Order denying Young's and Hercon's Motions pursuant to Kentucky Civil Rules of Procedure ("CR") 59.05. Judge Gabhart granted Young's Motion for the Trial Court to state its reasoning in support thereof, and thus, the Trial Court provided an extensive analysis of the facts and applicable law.

As for its analysis, the Trial Court applied the governing case of *Travelers Indemnity v. Moore & Associates*, 216 S.W.3d 302 (Tenn. 2007). The Trial Court found that Hercon's misapplication of PermaCrete in the form of over

spraying, under spraying, or spraying improper areas did not constitute an occurrence under the Zurich or Penn National Policy because the alleged damage was not only foreseeable, but also seeable, or plainly visible, at the time of application. The Trial Court styled its Opinion and Order with both the Dec Action and Underlying Action case numbers, and the clerk entered it into both actions.

Young and Hercon filed Notices of Appeal from both the summary Order dated August 3, 2022, and the longer Opinion and Order dated September 29, 2023. As a result, there are four appeals at issue.[2] On January 21, 2024, this Court's Motion Panel, denied consolidation, but placed all of the appeals before this same Merits Panel for the issuance of a single opinion.

D. *The Insurance Policies*

For purposes of our analysis, the Zurich Policy and Penn National Policy (collectively referred to as the "Policies") have identical insuring agreements and definitions.[3] Specifically, the Policies provide that the insurers

---

[2] Hercon's appeals are numbered No. 23-CA-01249-MR (from 17-CI-00730) and No. 23-CA-01290-MR (from 10-CI-01290). Young's appeals are numbered No. 23-CA-01286-MR (from 17-CI-00730) and No. 23-CA-01503-MR (from 10-CI-01245).

[3] While the Policies also include several exclusions that arguably apply, such as those entitled "Damage to Property," "Damage to Your Product," and "Damage to Your Work," we will not quote or discuss those exclusions because we ultimately find that subject damage does not constitute an occurrence.

will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which" the insurance applies. The Policies define "[p]roperty damage" as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." For the insurance to apply, there must be "bodily injury" or "property damage" caused by an "occurrence" within the coverage territory and during the policy period. The Policies define "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## STANDARD OF REVIEW

CR 56.01 allows as follows: "[a] party seeking to . . . obtain a declaratory judgment may, at any time . . . move with or without supporting affidavits for a summary judgment in his favor . . . ." *See also Schmidt v. Halpin*, 351 S.W.2d 57, 58 (Ky. 1961). As here, where summary judgment has been granted in a declaratory judgment action, and no bench trial held, we utilize the summary judgment standard of review. *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021) (citing *Ladd v. Ladd*, 323 S.W.3d 772, 776 (Ky. App. 2010)). The parties seem to agree that there are no genuine issues of material fact. Therefore, we need only conduct a *de novo* review of the Trial Court's interpretation of the Policies and its application of the law. *Bruner v.*

*Cooper*, 677 S.W.3d 252, 269 (Ky. 2023) (footnote omitted); *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010).

## ANALYSIS

Prior to embarking on our analysis, we note that Zurich puts forth an alternative coverage analysis under Kentucky law. However, no party has appealed the Trial Court's application of Tennessee law to the substantive issues of coverage pursuant to the standard articulated in *Grange Property and Casualty Company v. Tennessee Farmers Mutual Insurance Company*, 445 S.W.3d 51 (Ky. App. 2014). Therefore, we will not disturb the Trial Court's application of Tennessee law.

An insurer's duty to defend its insured, which is broader than the duty to indemnify, is triggered if the underlying complaint alleges damages that are within the risk covered by the insurance contract. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994). Under Tennessee law, any doubt regarding whether a cause of action, or the allegations thereto, falls within an insurance policy's coverages, is an issue a court must resolve in favor of the insured. *Dempster Bros., Inc. v. United States Fid. & Guar. Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964).

Tennessee law also requires us to examine the insuring agreement prior to any exclusions "to avoid confusion and error." *Moore & Assocs.*, 216

-12-

S.W.3d at 306 (citing *Naifeh v. Valley Forge Life Ins. Co.,* 204 S.W.3d 758, 768 (Tenn. 2006)). In doing so, we must construe the insurance contract "fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh,* 204 S.W.3d at 768.

In conformity with Tennessee law, we begin our analysis by examining whether Young's Amended Complaint alleges damage covered within the terms of the Policies' insuring agreements.[4] Accordingly, we must determine if Young's alleged damages constitute "property damage" resulting from an "occurrence." The parties agree that *Travelers Indemnity v. Moore, supra,* is controlling and instructive as to both requirements. The facts of *Moore* are uncomplicated. There, the plaintiff contracted with Moore, a construction company, to design and build a hotel. 216 S.W.3d at 304. In turn, Moore hired a subcontractor to install windows. *Id.* Plaintiff later discovered water damage, including mold and structural deterioration, caused by water penetration through the windows. *Id.* Arguing against coverage, Moore's insurer argued that the damage caused by the subcontractor's improper window installation failed to qualify as either "property damage" or an "occurrence" as defined in the subject policy. *Id.* at 308, 309. The Tennessee Supreme Court rejected both arguments,

_____

[4] We note initially that there is no dispute that the alleged damage to Young's Residence happened within the coverage territory and during the Policies' effective periods.

finding that coverage was triggered by an occurrence that caused property damage. *Id.* at 309, 310.

Turning first to the issue of damage, the Policies define "[p]roperty damage" as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured."[5] Here, Young alleges damages arising from QSI's representations and supply of PermaCrete, along with Hercon's application of PermaCrete. In *Moore*, the Tennessee Supreme Court recognized that a claim solely "for replacement of a defective component or correction of [a] faulty installation[,]" without more, may not qualify as "property damage." 216 S.W.3d at 310. However, as *Moore* illustrated, where the alleged faulty work results in more than the "mere inclusion of a defective component" and causes physical damage to otherwise non-defective property, such damage constitutes "property damage" under a CGL policy of insurance. *Id.* We find that Young's Amended Complaint goes beyond alleging the mere inclusion of a defective product or faulty workmanship, and adequately alleges physical injury to Young's otherwise undamaged Residence.

Moving on to the next step of our analysis, we focus on whether the alleged damage resulted from an "occurrence." Like most modern, form-CGL

---

[5] To the extent that Young alleged damage in the form of purchasing more PermaCrete than QSI estimated, we find that such excess cost does not fall within the definition of "property damage" or "physical injury."

policies, "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the Policies do not define the term "accident," the Tennessee Supreme Court in *Moore* provided clear guidance on the term's meaning. 216 S.W.3d at 308. Specifically, the Tennessee Supreme Court explained the ordinary meaning of "accident" is "an event not reasonably to be foreseen, unexpected and fortuitous[,]" including "damage which is undesigned and unexpected." *Id.* at 308 (quoting *Gassaway v. Travelers Ins. Co.*, 222 Tenn. 649, 439 S.W.2d 605, 608 (1969)). Consistent with its prior applications, the Tennessee Supreme Court interpreted the term "accident" as used in the CGL policy as "an unforeseen or unexpected event." *Id.* Whether an event is foreseeable is viewed from the perspective of the insured. *Id.* (citing *Gassaway*, 439 S.W.2d at 608-09).

To comprehend fully the Tennessee Supreme Court's application of the above-detailed definition of the term "accident," we must delve into its reasoning. In *Moore*, based on the arguments advanced by the CGL insurer, the Tennessee Supreme Court held that the foreseeability of damages must be analyzed under an assumption that the subcontractor's work was completed properly. *Id.* at 310-11. In formulating its conclusion, the Tennessee Supreme Court clarified that the negligent completion of a project cannot demonstrate foreseeable damages; otherwise, "negligent acts of the insured will almost never be 'accidents' because,

by definition, negligence requires that damages be foreseeable." *Id.* at 308 (citations removed). Instead, the Tennessee Supreme Court considered "whether damages would have been foreseeable if the insured had completed the work properly." *Id.* at 309. Ultimately, the Tennessee Supreme Court concluded that the water damage resulted from an occurrence, as Moore could not have foreseen damage from water penetration sans the subcontractor's improper installation. *Id.*

In the current case, the Trial Court applied the definition of "accident" as articulated in *Moore* and determined that Hercon's misapplication of the PermaCrete was a foreseeable and expected event, thereby not qualifying as an accident or occurrence. The Trial Court also distinguished the instant facts from those in *Moore*, noting that the damage in *Moore* was not immediately seeable at the time of the window installation, and damaged other areas beyond the windows due to repeated water penetration. We agree with the Trial Court's thoughtful analysis.

Pursuant to *Moore*, our inquiry into foreseeability must be viewed from the standpoint of the insured, in this case Hercon, who itself performed the work that visibly, immediately, and allegedly caused the alleged damage. To this point, unlike *Moore*, this case does not involve a fortuitous event that caused damage, such as rainwater intrusion caused by the negligence of a third party; rather, Hercon itself, as the insured of MCC and then Zurich, directly produced the

alleged damage the moment it sprayed PermaCrete to the Residence. And those obvious actions are exactly what Young complains of here. The alleged negligence was so evident – even to a layperson – that Young did not allow Hercon to finish the job; hence, the Trial Court's reference to "seeable" damage. Rather, Young requested that QSI use a different company that led to similar involvement of D&S, which Young also fired.

In this situation, the alleged damage is imminently and completely foreseeable. Even the most novice of contractors – and laymen insureds – can decipher that spraying permanent adhesive material directly to a structure with no barrier to protect it will result in the material sticking to the structure. If we assume the facts that Young alleged are true, as we must in a *de novo* standard of appellate review, that is precisely what occurred in the case before us. The resulting damage from Hercon's actions was clearly foreseeable to Hercon. To hold that damages from Hercon intentionally spraying PermaCrete to areas of the structure that were not protected with a barrier as an accidental occurrence is simply nonsensical.

At oral argument, Hercon and Young criticized the Trial Court's usage of the term "seeable" and tried to differentiate that term from the meaning of legal foreseeability. According to them, if the work was done correctly, the

damage would never be foreseeable,[6] and it would always be covered. They complained flatly that damages from work done that was clearly incorrect is always foreseeable and would never be covered. Those parties took issue with the Trial Court's observation that patent, and not latent, defects occurred.

And yet, that is precisely the point that the Trial Court correctly made, regardless of the terms used. Obvious damage that is intentionally inflicted directly by a contractor is patent, seeable, and legally foreseeable. It makes sense that insurers would decline coverage for such damage because it is not accidental or fortuitous, but rather inherently evident, conspicuous, and knowable. Similarly, we find no legal support for Young's attempted distinction at oral argument between over-spraying or under-spraying – clear damage for which he sought coverage – versus spraying too thinly or too thickly, which he claimed would be within the scope of work and not covered. Thus, and simply put, it is quite logical that insurers would not cover contractors who knowingly watched themselves directly damage projects.

In the same vein, and as Penn National aptly noted at oral argument, a big part of the damage complained of herein resulted from Hercon's failure to prepare the surfaces adequately before spraying. If one such as Hercon fails to tape off and cover areas that should not be sprayed, *i.e.*, not undertake any

---

[6] It would also not be seeable, although Hercon and Young do not accept the usage of that term.

preventative measures to avoid over-spraying, damage from improper spraying upon surfaces that were not meant to be sprayed will obviously and foreseeably ensue. And they will not be covered by insurance because failing to do the hard work of preparation is not accidental.

Moreover, in evaluating Hercon's foreseeability of damages, we find that it would strain reason to extend a presumption that it performed its work in a workman-like manner. Similar to the Trial Court's analysis, we must give weight to the distinguishing facts of *Moore*. One such fact that stands out prominently is that Hercon was not a subcontractor and did not have a contract with another company to perform the work, as in *Moore*. Rather, Hercon performed the work itself as a result of a direct contract with Young to apply PermaCrete. Therefore, there is no question as to whether Hercon could foresee the damage of its own alleged intentional failure to perform the job in a workman-like manner. Said differently, we reject the notion that *Moore* requires this Court to disregard Hercon's intentional spraying of PermaCrete on areas not protected by a barrier, clearly resulting in damages. This Court's common-sense determination that Hercon's actions did not constitute an "occurrence" triggering CGL coverage is also consistent with the Tennessee Supreme Court's construction of the term "accident" as something unexpected. *Moore*, 216 S.W.3d at 308.

It stands to reason that the allegations against QSI also fail to qualify as an occurrence. Perhaps *Moore* would be more favorable to coverage under the Penn National Policy had QSI acted as the general contractor and directly hired Hercon. In that situation, an argument could be made that the damage was unforeseeable because QSI must presume that Hercon properly applied PermaCrete to Young's residence. However, there is no allegation that QSI was contractually obligated or tasked with applying PermaCrete to Young's residence. The allegations against QSI are not for its own faulty workmanship; rather Young's allegations against QSI are derivative to its claims against Hercon for faulty workmanship and therefore cannot qualify as a covered occurrence. It is important here that Young directly contracted with Hercon itself. QSI is not the contractor, and any representations that it made – if there were misrepresentations – do not qualify as occurrences.

The only other case Young relies on to support its proposition is *Blake & Veatch Corp. v. Aspen Insurance Limited*, 882 F.3d 952, 966 (10th Cir. 2018). That case is not controlling precedent, and we find no basis to apply it to the facts before us. Thus, we find no coverage for the alleged damage under the QSI's Policy as the damage occurred from Hercon's non-accidental application as detailed above.

-20-

## CONCLUSION

The Trial Court correctly concluded that Young's Amended Complaint failed to allege an "occurrence" under the Policies as a matter of law. As such, Zurich and Penn National are not obligated to defend or indemnify their respective insureds in the Underlying Action. Having found no error, we affirm the Scott Circuit Court's Order dated August 3, 2022, and Opinion and Order dated September 29, 2023.

ALL CONCUR.

BRIEFS FOR APPELLANT/APPELLEE/CROSS-APPELLEE HERCON CONSTRUCTION, INC.:

Douglas L. Hoots
Susan Y.W. Chun
Lexington, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLEE ZURICH AMERICAN INSURANCE COMPANY:

Robert E. Stopher
Robert D. Bobrow
Louisville, Kentucky

BRIEFS FOR PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, APPELLEE/CROSS-APPELLEE:

Donald M. Wakefield
J. Stefan Bing
Lexington, Kentucky

ORAL ARGUMENT FOR APPELLANT/APPELLEE/CROSS-APPELLEE HERCON CONSTRUCTION, INC.:

Douglas L. Hoots
Lexington, Kentucky

BRIEFS FOR APPELLANTS/CROSS-APPELLANTS/APPELLEES ARROWHEAD SYSTEMS, L.L.C. (F/K/A ARROWHEAD SYSTEMS, INC.) AND THOMAS YOUNG:

John N. Billings
Richard J. Dieffenbach
Zachary G. Cato
Lexington, Kentucky

ORAL ARGUMENT FOR APPELLANTS/CROSS-APPELLANTS/APPELLEES ARROWHEAD SYSTEMS, L.L.C. (F/K/A ARROWHEAD SYSTEMS, INC.) AND THOMAS YOUNG:

John N. Billings
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEE/CROSS-APPELLEE
ZURICH AMERICAN INSURANCE
COMPANY:

Robert E. Stopher
Robert D. Bobrow
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE/CROSS-APPELLEE
PENNSYLVANIA NATIONAL
MUTUAL INSURANCE
COMPANY:

Donald M. Wakefield
Lexington, Kentucky